[No. 5775. Decided December 19, 1905.]

## JOHN H. JOHNSON et al., *Appellants,* v. THE CITY OF TACOMA, *Respondent.*[1]

EVIDENCE—EXPERT—VALUES.. Opinion or expert evidence is admissible to show the amount of benefits to real estate by reason of local improvements.

EVIDENCE—EXPERTS—COMPETENCY. Real estate men having knowledge of the neighborhood are qualified to give opinion evidence as to the value of benefits from local improvements.

MUNICIPAL CORPORATIONS—LOCAL IMPROVEMENTS—ASSESSMENTS—EVIDENCE—ADMISSIBILITY. It is immaterial that papers were introduced in evidence to show the authority of the commissioner of public works to deduct sums from the assessment of certain lots and add to the assessment of other lots, where the action of the commissioner was afterwards ratified by the city council.

SAME—BENEFITS—SITUATION OF LOTS. Where lots are so situated as to leave an entrance from two streets it cannot be said that they do not abut upon the street at the rear of the houses as constructed thereon, or are not benefited by the improvement of such street.

SAME—ASSESSMENTS—APPORTIONMENT. Where the improvement of a street required the construction of retaining walls to support the lower side of a street, and retaining walls had been constructed by certain lot owners, making it unnecessary for the city to construct such walls in front of such lots, it is not error to find the value of such walls to be $30 per lot, and that such lots would be benefited that much less by the improvement than other lots similarly

1Reported in 82 Pac. 1092.

situated, and the amount thus deducted may be equitably distributed
in a proper ratio upon such other lots in the district, as the council
find are not assessed to their full share of the expense according to
the benefits received.

Appeal from a judgment of the superior court for Pierce
county, Chapman, J., entered March 21, 1905, in favor of
the defendant, after a hearing on the merits, confirming an
assessment for local improvements. Affirmed.

*T. L. Stiles* and *Walter Loveday,* for appellants.

*O. G. Ellis, J. J. Anderson,* and *R. E. Evans,* for re-
spondent.

HADLEY, J.—This is an appeal from a judgment of the
superior court of Pierce county, confirming an assessment
made by the city of Tacoma upon the appellants' lots, for
the improvement of South C street in said city. The im-
provement extends from Division avenue, on the north, to
South Seventh street, on the south, and consists of an asphalt
roadway and concrete curb and sidewalks, together with some
necessary retaining walls. The property involved in this
appeal is located in block 7, which is bounded by said C
street on the east. The block is also bounded on the north
by Division avenue, on the west by St. Helens avenue, and
on the south by South Second street. The lots in the block
extend from C street on the east, to St. Helens avenue, on
the west, there being no alley in the block.

At the northwest corner of the block, the point where St.
Helens avenue intersects with Division avenue, the elevation
of St. Helens avenue is about nineteen and five-tenths feet
higher than C street. The difference in elevation from there
to the southward gradually increases until, at the southwest
corner of the block, at its intersection with South Second
street, St. Helens avenue is about fifty and five-tenths feet
higher than the level of C street. The northerly, or Division
avenue, end of the block is approximately ninety-three feet
wide, and from there it widens until at South Second street

it is about one hundred and eighty feet wide. The lots in the block descend from the St. Helens avenue front toward the C street front, and are accessible from both streets.

The city's counsel have argued to some extent that the city was empowered to include the lots of said block in an assessment district for the improvement of C street, and to charge the cost of said improvement to the lots according to the benefits received. This argument was occasioned by the fact that appellants' written objections to the assessment roll raised the question that, as C street is used largely by the general public as an avenue of communication between the lower business portions of the city and the higher residence portions thereof, it is not subject to improvement on the local assessment plan, and that the city itself should have borne all, or a large part, of the expense. Some remarks in appellants' opening brief also led respondent's counsel to believe that the same contention is being urged on this appeal; but in the reply brief appellants expressly disclaim any such intention, and say that the testimony, and their argument thereon, showing the situation of the streets and the use of them, was not for the purpose of urging that the property cannot be assessed at all, but to show, as clearly as possible, how appellants' lots are located and the reasons why they are not benefited by the improvement of C street, as lots are usually benefited by the improvement of a street in their vicinity. There is, therefore, no necessity for us to discuss the first point argued in respondent's brief. The points really urged by appellants upon this appeal are that the assessment exceeds the benefits to their property, and that it is not fair in comparison with that upon other property in the district. A further point is presented to the effect that at least the sum of $7.85 was illegally assessed against each of appellants' lots.

Certain errors are assigned to the effect that the court permitted opinion evidence of witnesses as to the gross amount of benefits accruing to the property from the improvement.

The following decisions of this court are cited in support of
the claim that it was error to admit such testimony:   *De
Wald v. Ingle,* 31 Wash. 616, 72 Pac. 469; *Berg v. Hump-
tulips Boom & River Imp. Co.,* 38 Wash. 342, 80 Pac. 528.
The first case cited related to the opinion of the plaintiff,
in an action for damages for personal injuries, as to the value
of the pain and suffering endured.   In the other case the
plaintiff had testified, giving his opinion as to the gross
amount of his damages suffered by injury to his cattle from
flooding his lands.    The personal injury case was clearly
not one for opinion evidence, for the reason that the basis
of the opinion had no definite standard.   In the other case
it was said that the damages claimed did not come within
the allegations of the complaint, and that it was apparent
that at least some of the elements of damage considered by
the witness could not be considered under any view of the
law.   The facts of neither case are analogous to those in the
case at bar.   The evidence received here related to the amount
of benefits to real estate by reason of local improvements.
The subject is but a phase of the question of value, since the
benefits are measured by the increased value caused by the
improvements.   Speaking of the testimony affecting values
of property, this court, in *Ingram v. Wishkah Boom Co.,*
35 Wash. 191, 77 Pac. 34, said:

"But value, when applied to property, is capable of at
least approximate admeasurement, and is a subject on which
a person can acquire a knowledge not possessed by the gen-
erality of mankind, and is held everywhere to be a proper
subject for opinion or expert evidence.   Indeed, values could
hardly be proved in any other way, and it would practically
be a denial of the right to recover for injuries to property,
if witnesses were not permitted to give their opinion as to
the amount a particular piece of property has depreciated
from a given cause."

In the above case *De Wald v. Ingle, supra,* is distinguished
as involving a different principle.   In *Seattle etc. R. Co. v.*

*Gilchrist,* 4 Wash. 509, 30 Pac. 738, it was held that a witness could state his opinion as to the amount of depreciation in value of land on account of the appropriation of a right of way and the construction of a railroad. In 12 Am. & Eng. Ency. Law (2d ed.), 461, it is stated that the rule in some jurisdictions is for the witness to give his opinion as to the value of the property both before and after the injury, leaving the court or jury to make the deduction; while, in others, witnesses may state their opinions generally as to the amount of damages. As belonging to the latter class, citations are given from twelve states, including Washington, *Seattle etc. R. Co. v. Gilchrist, supra,* being cited from this state.

Applying the same principle, such evidence is admissible in this state to prove the value of benefits to real estate. Its accuracy may be tested by cross-examination. It is further urged, however, that the witnesses were not shown to be qualified to give opinions. We think the record shows sufficient qualification to permit them to testify. They certainly appear to have had some knowledge of the neighborhood, and they were all real estate men in the city of Tacoma. Witnesses who are not strictly experts but who have some knowledge of the value may testify. The fact that the knowledge is slight goes to the weight of their testimony rather than to its competency. 1 Elliott, Evidence, § 685.

Appellants' next contention is as follows: The commissioner of public works testified at the trial, and appellants called his attention to his action in making up a second assessment roll wherein he had deducted $30 for each of thirty-eight lots from the assessment shown upon the former roll, and distributed the amount upon the lots of appellants and others, by increasing the amounts against the latter to the extent of $7.85 per lot. After calling his attention to the above, appellants inquired of him as to his authority for so doing. The witness produced certain papers, which were identified but not then put in evidence. Afterwards, upon the request of respondent and over the objection of appellants,

they were admitted in evidence. It is claimed that the papers show no authority from the city to the commissioner of public works to make the change in the assessment. As we view the matter, it is immaterial what these papers contained bearing upon the question of authority, since the action of the commissioner in making a second roll was in all particulars ratified by the city council by its order confirming the roll, after due notice to appellants and all concerned. In view of such ratification, we do not find it necessary to examine the evidence criticized.

The next error claimed is that the court refused to reduce appellants' assessments to amounts equal to the benefits received by their lots from the improvement. Having reference now to the first assessment roll only, we are impressed from the whole record that a reasonable effort was made to equitably assess all the property according to the benefits received. Considering the peculiar situation of the lots in the district with reference to the street, an absolutely accurate and just result in all cases would perhaps be impossible to reach; but we are satisfied that we should not be able to arrive at a more just result. Some of the lots, as is true of most of appellants' lots, rise above the street; others are far below it, and still others are at a level with it. Under such conditions, it is exceedingly difficult to reach a result that is satisfactory to all concerned. We are satisfied that the lots of appellants are substantially benefited by the improvement. It is true, the houses are built fronting to the west on St. Helens avenue; at least, appellants regard that as the front side of their premises. Entrance is made directly from said street into the several houses. The houses are so built, however, that a lower or basement story is below St. Helens avenue and extends downward and backward toward C street. The lots are terraced toward the latter street, so that access is made to the houses directly from said street. The premises abut upon both streets, and are so situated and used that they may be said to have a front upon each street.

One street seems to be about as useful as the other in connection with the occupation of the several lots. Such a substantial improvement as that upon C street directly abutting upon appellants' lots must be a benefit to those lots, and we do not think we should say from the entire record before us that the several amounts assessed to appellants' lots are excessive, or that they are not fair in comparison with the assessment upon other lots in the district.

It is next argued that, in any event, the court erred in refusing to reduce the assessment upon each of appellants' lots to the extent of $7.85 per lot, which sum was added to them upon the second roll. Under this head it is first argued that the commissioner of public works had no power to change the assessments made upon the first roll except as he was ordered to do so by the city council. From what has been hereinbefore said, it will be seen that we regard the matter of the commissioner's authority in the premises as being established by the council's subsequent approval and ratification of his acts.

It is next contended that neither the council nor the commissioner nor both combined, had the power to make the changes which were made by the second roll. By that roll a reduction of $30 per lot from the amounts set forth in the first roll was made as to thirty-eight lots, aggregating $1,140 in all. Said sum was distributed upon other lots in the district, and the additional amount charged to each of appellants' lots was $7.85. The theory upon which this was done was that the plan of the improvement called for the construction of retaining walls or structures to support the lower side of the street and prevent it from sliding away by reason of the action of the elements. Such structures were built at places along the street. Certain lot owners on the lower side of the street had theretofore, at their own expense, constructed retaining devices, or had caused their lots to be filled in such a manner that additional structures, for the support of the street in front of such lots were deemed unnecessary,

and for that reason they were not built. In the opinion of the commissioner and council, these lot owners had, as aforesaid, already contributed to aid in the improvement of the street by rendering the erection of retaining structures unnecessary to the extent of their contributions. The value of such contributions to the district was estimated to be $30 per lot for each lot whose owner had thus contributed. It was therefore considered that the benefit of the improvement as constructed by the city was that much less to each of said lots than the amount originally determined, and that it did benefit each of the lots of appellants and others to the extent of $7.85 more than the amount first determined. It was proper to consider the improvement as a whole with reference to the benefits derived by the property in the district. It was the improvement and security of the continued thoroughfare that benefited the property, and the outlay of the owners of the lower lying lots, which contributed to change natural conditions so as to effect such end, was a benefit to other property in the district.

The structures erected, and fills made, by such lot owners may have been of incidental benefit to the lots themselves, but it neither follows that the entire resulting benefit attached to those lots alone, nor that other lots in the improvement district were not thereby benefited to the extent found by the commissioner and council. The relation of these lots and their owners to the improvement is similar to that of a lot and its owner where the latter has constructed a sidewalk in front of his lot. The expense of the sidewalk is a necessary part of the whole and completed improvement. It is of benefit to the other property in the district as well as to the single lot, and such lot owners are frequently allowed a reduction in their assessments by reason of such outlay. Such allowances, we understand, were made in the case at bar. Such a sidewalk becomes, in a sense, the property of the entire improvement district, and the expense thereof should be borne ratably by all property benefited, not exceeding the extent of

the value to the property. Such a result is effected when the owner of the lot is allowed the expense, and when the amount thereof is ratably charged to the lots benefited. So with the allowances made here. The expense of the retaining structures and fills resulted in benefit to the district generally, and it was proper that it should be generally borne by the property therein.

The fact that no part thereof may have been added to the assessment against certain lots upon the second roll does not establish that the assessment was not equitable and fair. Such other lots, in the judgment of the authorities, were already assessed their full and just share of the expense according to benefits received, while in their opinion the lots of appellants and others had not been so fully assessed upon the first roll. We are not convinced that their judgment in that regard was incorrect, and inasmuch as we believe they had the clear power to do as they did, we find no error pertaining to the second assessment roll.

Respondent in its brief seems to be under the impression that appellants insist that they should have similar allowances for their bulkheads and walls, on the theory that they retain the surface of their lots from falling into the street. Considerable space is devoted in the respondent's brief to an effort to distinguish these walls as being wholly for the benefit of the lots and as differing in their relation to the street from the structures and fills on the lower side, which retain the street itself from sliding down. In their reply brief, however, appellants expressly disclaim that they ask any such an allowance in this court. They simply assert that it was unfair to make the allowance to the lower lot owners without making a similar one to them; but seem to plant themselves upon the ground that such allowances are improper in either case. Inasmuch as appellants are not asking a readjustment of the assessment by way of allowance for their walls, it is therefore unnecessary that we examine respondent's argu-

ment that appellants' walls are not for the benefit of the street, as are those upon its lower side.

We believe the judgment below was as substantially right as any one this court could render, and with the conclusion that the judgment should be affirmed it is unnecessary that we discuss the constitutionality of the act of 1905, chapter 150, of the session laws of that year. Respondent claims the benefit of that act against any claims appellants make here, and appellants assert that it is unconstitutional. Inasmuch as our examination discloses no ground for the relief of the appellants upon the merits, when considered without regard to the statute, it becomes unnecessary to pass upon the constitutional question.

The judgment is affirmed.

MOUNT, C. J., FULLERTON, RUDKIN, CROW, DUNBAR, and ROOT, JJ., concur.