[No. 6629.   Decided September 7, 1907.]

CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY,
*Appellant*, v. HUBBARD F. ALEXANDER *et al.*,
*Respondents.*[1]

EMINENT DOMAIN—DAMAGES—REMOTENESS—INJURY TO LAND NOT
TAKEN. In proceedings to condemn land for a railroad right of way,
to be used as an approach to a stationary bridge, authorized by the
Federal government over a stream navigable for small craft, it is
error to permit the defendants to show damages that would accrue
to their remaining lands in case the river is improved and the gov-
ernment requires the substitution of a drawbridge obstructing the
shore of such remaining lands, where such prospect is very remote
and condemnation is not sought of defendant's shore rights, dam-
ages to which can be recovered in another action.

SAME—DAMAGES—EVIDENCE—VALUE OF PROPERTY. On the ques-
tion of the value of land condemned, it is inadmissible to show what
price similar land near by is held at by another owner.

DEPOSITIONS—EXAMINATION OF WITNESS—EXCEPTIONS. Upon tak-
ing a deposition before a trial judge, where objections are ruled on at
the time and exceptions taken, the exceptions need not be renewed
at the trial.

EMINENT DOMAIN—DAMAGES—EVIDENCE—VALUES OF PROPERTY—
EXPERTS. A witness not acquainted with values in a certain city,
who examines a few manufacturing sites with a view of purchasing
or locating in such city, is not qualified as an expert in real estate
values in such city.

SAME—VALUE OF PROPERTY—OFFERS. On the question of the value
of land condemned, it is error to permit the defendant, on examina-
tion in chief, to introduce evidence of offers that had been made
for the land.

SAME—VALUE OF PROPERTY—ORDER OF PROOF—REBUTTAL. Upon an
issue as to damages to a tract of land, cut in two by condemnation
for a railroad right of way, where the evidence on the part of the
defendant shows that the value of the tract for a manufacturing
plant is thereby destroyed, it is error to exclude expert evidence in
rebuttal to the effect that such a manufacturing plant as referred to
by the defendants could be built and successfully operated on the
two tracts, that question not having been raised in plaintiff's case
in chief.

[1]Reported in 91 Pac. 626.

TRIAL—INSTRUCTIONS. The unnecessary repetition of instructions might be ground for reversal.

EMINENT DOMAIN—DAMAGES—REMOTENESS—VALUE OF PROPERTY—EVIDENCE—SPECULATIVE USES. In estimating the value of land taken in condemnation proceedings, reference may be had to the uses to which the land is suitable, or may reasonably be expected to be put in the immediate future; but the fact that a river of small depth may be made navigable by the government for large vessels, and the land thereby become a shipping point, is too remote and speculative to be considered in fixing the value of the land, when no dredging plan is shown to any point within two miles of the property.

Appeal from a judgment of the superior court for Pierce county, Snell, J., entered December 1, 1906, upon the verdict of a jury awarding damages for the value of land condemned for a railroad right of way. Reversed.

*H. S. Griggs* ( *H. H. Field* and *William P. Reynolds*, of counsel), for appellant.

*Hudson & Holt* and *J. M. Ashton*, for respondents.

CROW, J.—Action by the plaintiff, Chicago, Milwaukee & St. Paul Railway Company, against Hubbard F. Alexander and others, to condemn land near the city of Tacoma for a right of way. After an order had been entered adjudging the proposed use to be public, a jury was impaneled, and awarded the defendants $55,205, for the value of the land taken and damage to the land not taken. From a judgment assessing damages in this amount, the plaintiff has appealed.

Respondents' land, with a frontage of four hundred and fifty-five feet on the east bank of the Puyallup river, consists of a little less than nine acres. Its north line abuts on the interurban electric railway track, which crosses the Puyallup river near respondents' northwest corner. The appellant is condemning a right of way for its tide water line, which crosses the nine-acre tract from southeast to northwest, dividing it into two parts, but does not cross the river. It is also condemning a right of way over the south side of respondents'

land for its city line, which crosses the river from east to west. Appellant filed and served on respondents profiles of its proposed stationary bridge across the Puyallup river, together with a certificate of its approval by the proper United States authorities. This bridge will not touch respondents' land or water front. The appellant is appropriating 2.35 acres, leaving 3.25 acres fronting the Puyallup river, and 3.21 acres separated from the river by appellant's tide water line. Respondents' land is located a considerable distance inland from Puget Sound. Appellant's city line of railway will be constructed on an embankment from twenty-five to twenty-seven feet in height, and its tide water line on an embankment about five feet in height above the surface of respondents' land. The appellant, by stipulation on file, has agreed to construct and forever maintain a suitable crossing between respondents' two remaining tracts over appellant's tide water line wherever respondents desire, and also such culverts and drains as may be necessary to afford the land as good drainage as it has by nature.

The respondents introduced one Nicholson, a civil engineer, who, over appellant's objections, was permitted to testify that, if the Puyallup river should hereafter be made navigable for large vessels, and the United States government should rquire appellant to construct a drawbridge across the river on its city line, such drawbridge, when opened for the passage of vessels, would obstruct respondents' water front to the extent of about seventy-six feet. The purpose of this evidence was to show that such obstruction would interfere with steamships and other vessels that might come from Puget Sound and stop at respondents' water front. At present the river has but little depth. It is not shown that any vessels larger than steam tugs have ever passed the interurban bridge. The possibility of the river being dredged to respondents' land by the United States government is very remote. There is no certainty that the government will ever require a drawbridge near respondents' land. If it should do so, respondents can,

in another action, then recover such damages as they may sustain by reason thereof. The appellant is not seeking to condemn or interfere with any of respondents' shore rights. The United States government has authorized a stationary bridge which does not touch their land. No other bridge may ever be required. This evidence was calculated to mislead the jury into awarding damages which the respondents were not entitled to recover, and its admission was therefore erroneous.

One Baker, who owns three or four acres of similar land, near that of respondents, was, over appellant's objection, permitted to testify that he held the same at $15,000 per acre. This evidence, admitted on direct examination, was improper and constituted error, not being a correct test of value. An owner might not be willing to sell at any price, and might therefore place an excessive value on his own property. The issue before the jury was the fair market value of the land taken, and not what some owner might arbitrarily ask for similar land held by him.

The respondents introduced the deposition of one Stokes, a resident of Portland, Oregon, and manager of a large sawmill and manufacturing plant at Bucoda, Washington. This witness was not shown to be an expert on values, nor was he familiar by acquaintance and experience with lands in or near the city of Tacoma. He testified that, on a trip to Tacoma, he looked for a site for a large lumber mill and manufacturing plant where he could be near tide water with the advantages of navigation; that he investigated the respondents' nine-acre tract; that he priced some land on the Sound, near Old Town in Tacoma, several miles distant; that he regarded respondents' land as especially valuable for a large mill if the entire nine acres could be used in one tract without any railroad crossing it; that he examined the land after this condemnation proceeding had been commenced, when it was known that it would be divided into two tracts by appellant's tide water line; and the respondent Alexander wanted to know if

he could use the tract as it would be thus divided. He was about to state a conditional offer he then made to Alexander, when appellant objected, but its objection being overruled, the witness stated his offer, which he had made on condition that the land contained something over eight acres and would not be divided by any line of railroad. Afterwards the appellant interposed a motion to strike this answer. Sustaining this motion, the trial judge, in part, said:

"If a man is offered a certain price in good faith by a man who is liable to carry the offer out, that would be the best criterion of the value of property, . . . The supreme court of the United States, however, reasons that offers are not evidence of what property will bring, and it seems, in *Parks v. City of Seattle*, that our own supreme court has plainly affirmed that doctrine, although in that case the offer sought to be proven was proffered from the mouth of the plaintiff to whom the offer was made, and the man making the offer was not on the witness stand and subject to cross-examination. Yet I think they have very definitely settled the doctrine that that class of testimony is not competent to fix values. I think that the fact might be brought out in another way, and in a way which would avoid the error or the danger that the supreme court of the United States and the supreme court of this state seem to feel has followed that class of testimony. . . . I think that this testimony, or rather, this offer, as proven by this witness, is hypothetical and based on a condition which could not exist, and for that reason, and for the further reason that class of testimony is not a proper way to prove values, this question and this answer may be stricken. I think, however, that you may ask this witness how much that property is worth, and he may answer what he considers it worth, and I think he might furthermore be permitted to back up his opinion by saying that he would give that for the property. . . But if this witness is willing to come on the stand and give it as his opinion that the property was worth just what he offered for it, I think that is proper testimony; he can testify what it is worth. . . . and I think he would be permitted to go further and say he is ready to take it at that price. . . . The question is, what is the value, and if he can testify that the value of the property is just what he offered, I think that would be competent."

After further questions and objections, the witness testified, in substance, that the land as an entire tract was worth $87,300, what he had offered for it, but that, divided by appellant's proposed tide water line of road, it would be of but little value for a manufacturing plant. Counsel for respondents asked the witness whether he stood ready to pay for the land the value he had referred to, viz., $87,300, assuming the acreage was about what he understood it to be, and over appellant's objection he was permitted to answer in the affirmative. This statement shows, (1) that, in effect, the witness was permitted to state the conditional offer made by him; (2) that the evidence finally given was the direct result of a voluntary suggestion, made by the court in the presence of the witness, that he could base his estimate of value upon what he had offered for the land. The offer made by the witness was thus placed before the jury.

The respondents contend, (1) that no proper exceptions were taken to this evidence; that appellant's only exceptions were in the deposition, and not renewed in court; (2) that the witness only testified as an expert to his valuation of the land; and (3) that while an offer for the land may be shown by evidence of the owner to whom it was made, it may be shown by the person making it, he being subject to cross-examination. The deposition had been taken before the trial judge, who ruled on the objections when made and allowed exceptions. It was not necessary to renew these exceptions at the trial, as it would have been had the deposition been taken before a notary public, or other officer than the judge himself. The witness was not shown to be qualified as an expert on land values in or near Tacoma; hence the substance of his evidence was merely a statement of the offer made by him. Neither the party who makes an offer for land nor the party to whom it is made should, for the purpose of showing value, be permitted to testify to the same upon his examination in chief in an action of this character. In *Hine v. Manhattan R. Co.*, 132 N. Y. 477,

480, 30 N. E. 985, 15 L. R. A. 591, Mr. Justice Parker, quoting from *Keller v. Paine*, 34 Hun. 167, said:

"But we pass to the objection that in such a case as we have under consideration, offers may not be proven even by the party making them. The General Term of the fourth department, had the question before it in *Keller v. Paine* (34 Hun. 167-177). And in discussing the question the court said: 'It has been intimated in some cases that offers are some evidence of value. But it is a class of evidence which it is much safer to reject than to receive. Its value depends upon too many circumstances. If evidence of offers is to be received it will be important to know whether the offer was made in good faith, by a man of good judgment, acquainted with the value of the article and of sufficient ability to pay; also whether the offer was cash, for credit, in exchange, and whether made with reference to the market value of the article, or to supply a particular need or to gratify a fancy. Private offers can be multiplied to any extent for the purpose of a cause, and the bad faith in which they were made would be difficult to prove.' The reasons thus assigned in support of the decision made we finally approve."

See, also, *Parke v. Seattle*, 8 Wash. 78, 35 Pac. 594; *Saint Joseph etc. R. Co. v. Orr*, 8 Kan. 419; *Sharp v. United States*, 191 U. S. 341, 24 Sup. Ct. 114, 48 L. Ed. 211.

The appellant on rebuttal introduced one Hobart, a competent expert in designing and laying out sawmills and manufacturing plants, and offered to show by his testimony that he had designed a lumber mill and manufacturing plant which could be constructed and profitably operated on the two tracts of land left to respondents, and produce from seventy-five to ninety thousand feet of lumber a day in ten-hour shifts. Upon respondents' objection, this evidence was erroneously excluded as not proper rebuttal. The appellant in its principal case had not offered any evidence as to the available character of the land for sawmill and manufacturing purposes, although some incidental remarks on that question were made by its witnesses, principally in response to the cross-examination conducted by respondents' counsel. The appellant had not been

advised by any pleading or statement that the respondents would claim the entire tract was particularly valuable for a large sawmill and manufacturing plant, or that, after being divided by appellant's right of way, it would be of little or no value for any such purpose. After respondents had introduced such evidence to show value of the land taken and damage to the land not taken, the appellant should have been permitted to introduce in rebuttal the evidence offered.

Appellant contends that the trial court erred in unnecessary repetitions of its instructions, especially of those favorable to respondents. It contends that such action had a tendency to place undue and particular stress upon such instructions, was prejudicial to appellant, and constituted reversible error. The instructions were frequently and unnecessarily repeated. In view of the new trial to be granted herein, we will state that such a course should be avoided by trial judges. In *Meachem v. Hahn & Co.*, 46 Ill. App. 144, 149, the court, commenting on repeated instructions, well said:

"Counsel may select the strong and salient points appearing, and seek in the argument to direct the thought of the jury to them as being the important and controlling features of the case, but the instructions of the court should not be made the medium for conveying such views to the jury."

Although a judgment might not in every instance be reversed for such unnecessary repetitions, it might in furtherance of justice sometimes become necessary to grant a reversal. 1 Blashfield, Instructions to Juries, §108; 2 Current Law, 470.

Much evidence was admitted to show that the entire and undivided tract was especially valuable for an extensive manufacturing plant by reason of its location on the Puyallup river, which, if dredged, deepened and improved by the United States government, would become navigable for large ocean steamers, and that such vessels could then be taken to the respondents' water front for loading and unloading. Experts on land values took these possibilities into consideration when testifying to the market value of the land taken, and when

estimating damage to the land not taken. In arriving at the value of land taken for a public use, its market value may be shown, not merely for the use to which it may ·in fact be applied, but also with reference to the most available and valuable use to which it may be adapted. The supreme court of the United States, in *Boom Company v. Patterson*, 98 U. S. 403, 408, 25 L. Ed. 206, said:

"So many and varied are the circumstances to be taken into account in determining the value of property condemned for public purposes, that it is perhaps impossible to formulate a rule to govern its appraisement in all cases. Exceptional circumstances will modify the most carefully guarded rule; but, as a general thing, we should say that the compensation to the owner is to be estimated by reference to the uses for which the property is suitable, having regard to the existing business or wants of the community, or such as may be reasonably expected in the immediate future."

The words "immediate future," advisedly used, contemplate that the especial use must be valuable, practical, and available within a reasonable time. The Puyallup river is not at present navigable except for rafts, sawlogs, and possibly small tugboats. Steamers cannot reach respondents' property unless the river is dredged between it and Puget Sound. It is not shown that any dredging plan, to any point within two miles of respondents' land, has ever been contemplated or considered. Such an improvement may not be made for many years, or perhaps never, so as to reach respondents' land. Any valuable use of the land, therefore, based upon such navigation, is remote, uncertain, speculative, and an unreasonable circumstance to be considered either in fixing value of the land taken, or damage to the land not taken. The purpose of assessing damages in an action of this character is to award an owner fair, complete, and adequate compensation for land taken, based upon its actual market value, together with further and ample compensation for damages to land in the same tract, not taken. The condemning corporation should not be permitted to appropriate the land for any less sum. On the

other hand, it is not intended that owners of property may recover excessive damages based upon fictitious, visionary, or remote contingencies which may or may not at some indefinite time in the future, increase the value of the land. If the Puyallup river was navigable for large vessels at this time, or if it was reasonably certain that it would become so in the immediate future, the anticipated conditions above mentioned and valuations based thereon might become competent for consideration by the jury; but at present such conditions and circumstances, as a basis for valuation, are too remote, speculative, and improbable to warrant evidence of the character above mentioned. *Munkwitz v. Chicago etc. R. Co.*, 64 Wis. 403, 25 N. W. 438.

The respondents contend that the appellant has not interposed proper exceptions to this evidence. Without passing upon the sufficiency of the exceptions taken, we make the above suggestions in view of the fact that a new trial will be necessary in this cause.

The judgment is reversed, and the cause remanded for a new trial.

HADLEY, C. J., MOUNT, FULLERTON, RUDKIN, and DUNBAR, JJ., concur.