[No. 13747.   Department One.   May 26, 1917.]

KING COUNTY, *Respondent*, v. JOHN JOYCE *et al.*, *Appellants*, H. S. HENDRICKSON *et al.*, *Defendants*.[1]

EMINENT DOMAIN—TRIAL—RECEPTION OF EVIDENCE.   Where the county in an eminent domain case offered a properly identified map during the progress of the case as to part of the claimants, it is not necessary to reidentify it upon an issue as to other claimants, but the same is in evidence for all purposes.

EVIDENCE—OPINIONS—LAND VALUES—AMOUNT OF DAMAGES.   In an eminent domain case, qualified witnesses may give their opinions as to whether the benefits to accrue would outweigh the damages sustained.

EVIDENCE—CONCLUSIONS OF LAW—CONSTRUCTION OF CONTRACT—INTENT OF PARTY.   In eminent domain proceedings, it is not prejudicial error to allow claimants to state that they were the owners of shingle bolts on the land under the terms of a contract, where the question of ownership depended upon the intention of their company to abandon its rights under the contract.

TRIAL—OBJECTIONS—WAIVER.   An objection to testimony is waived by stating, upon argument, "Never mind.   It is not competent but we want to get through with the case," although a motion to strike was made after answer was completed.

APPEAL—REVIEW—HARMLESS ERROR.   Error in the admission of evidence as to an abandonment of appellant's rights is not prejudicial where the jury found there was no abandonment.

WITNESSES—CROSS-EXAMINATION.   A witness as to land values may be asked on cross-examination the amount he would loan upon the property as security.

TRIAL—REMARKS OF JUDGE.   Prejudicial error cannot be predicated upon the remark of the trial judge upon a party's recalling a witness, that "you have had him three or four times."

[1] Reported in 165 Pac. 399.

EMINENT DOMAIN—DAMAGES—EVIDENCE. Upon an issue as to the value of an abandoned railroad grade, evidence of tributary standing timber that might find a natural outlet over it is inadmissible as too remote and speculative.

SAME. In eminent domain proceedings to change a county road, evidence tending to show damages to bottom land is properly excluded, where its condition and potential uses were not changed and no basis for recovery was shown (ELLIS, C. J., dissenting).

APPEAL—REVIEW—RECORD—PRESUMPTIONS. Where the proceedings are not in the record and the court stated, on objection to improper argument of counsel, that he had given the jury proper instructions, it must be presumed that the jury was properly admonished at the time of the alleged offensive remarks.

Appeal from a judgment of the superior court for King county, Ronald, J., entered May 15, 1916, upon the verdict of a jury awarding damages in condemnation proceedings. Affirmed.

*Jay C. Allen,* for appellants.
*Alfred H. Lundin* and *Edwin C. Ewing,* for respondent.

CHADWICK, J.—This action was brought to condemn a right of way for a county road. The county is seeking to put a road across a part of a large tract of land owned by appellants. The land is situate partly in the Snoqualmie valley. The valley land is level, cultivated farm land. The remainder is logged-off hill land. The road contemplated, while new construction, is in fact a change in the present road leading across the hill lands of appellants. Instead of following over the break of the hill, it is to start some distance back, and is to follow the course of a gulch in which flows a small stream of water. The object of the change is to secure a more satisfactory grade from the hill to the valley below. There is no change of the highway where it traverses the valley.

Appellants set up damages for the increased cost of transporting shingle bolts; damages for the appropriation of a water-power site; damages for the appropriation of a grade

and right of way formerly occupied by a logging road; damages for building of fences and for the value of the land taken, which is approximately eleven acres; in all aggregating the sum of $18,570. From a verdict in the sum of $275, claimants have appealed.

I. The first error assigned is that the court permitted the witnesses to use a contour map or plat; that it went to the jury as an exhibit without proof that it had been made by any of them, and without proof as to its correctness. Aside from the fact that we find no prejudicial error in permitting the use of the map and in allowing it to go to the jury, we find that the map had been properly identified and admitted during the progress of the case of other claimants. Its accuracy was not questioned at the time. It was properly in the case under the rule of *In re Jackson Street*, 47 Wash. 243, 91 Pac. 970.

II. It is assigned as error that certain witnesses were permitted to say that, in their judgment, the benefits to accrue to appellants would outweigh any damage sustained. It is insisted that this was an invasion of the province of the jury, the very question the jury was called upon to decide, and that it is contrary to many decisions of this court. This court has held, in common with all others, that a witness will not be permitted to fix the amount of damage where a jury has been called upon to decide that issue. But there seems to be an exception to the rule. It is resorted to, or rather allowed, in condemnation cases where the amount of damage depends upon the value of tangible property. This exception is noted in Jones on Evidence, §§ 387, 388. That qualified witnesses may give their opinions as to the value of land before and after the taking is so well understood that we do not feel put to the necessity of citing authority. This being so, we find the rule extracted from the authorities by Mr. Jones to be most plausible. It follows:

"But in many states and with much reason it is held that opinions as to the damage sustained in such cases should be

received in evidence. These decisions are based upon the reasoning that, inasmuch as the amount of damages in such proceedings depends entirely upon opinions as to the value before and after the condemnation, and as these opinions are competent, it can make no material difference whether the witness gives his opinion as to the amount of damages at once or whether he is allowed simply to state to the jury his opinion as to values from which the opinion as to damages must necessarily follow by the processes of subtraction. The tendency of the later decisions seems to be in favor of this rule."

But were the question otherwise doubtful, it is not an open question in this state. In *Seattle & Montana R. Co. v. Gilchrist*, 4 Wash. 509, 30 Pac. 738, the court, in passing upon a like objection, said:

"It is also objected that one of the respondents was permitted to say how much, in his opinion, the land would be depreciated in value on account of the appropriation of the right-of-way and the construction of the railroad. It is conceded by appellant that it is competent for a witness, if properly qualified, to state his opinion as to the value of the land before and after the appropriation; but it is contended that it is for the jury to say what the damages are, and not the witness. While there is undoubtedly a conflict of authority upon this question, it seems difficult to perceive any substantial reason for rejecting such testimony. To admit evidence of the value of the land before and after the taking is to admit, in effect, the same thing to be done which appellant complains of, since the amount of the damages is then ascertained by the jury by the mere process of subtraction. And, this being so, we are unable to understand why the witness should not be permitted to state the result, as well as the facts from which such result is reached. In either case the amount of the damages is ultimately based on the opinion of the witness. The distinction here insisted on between the two methods is based on mere form, rather than substance. The facts upon which the witness bases his opinion may be shown on cross examination, and when this is done the jury have all the means which can be afforded for forming an independent judgment as to the damages."

That case is cited and the doctrine adhered to in *Johnson v. Tacoma*, 41 Wash. 51, 82 Pac. 1092.

III. The next assignment rests in the fact that the court permitted the jury to pass upon the question of ownership of certain shingle bolts remaining upon the land after logging operations had ceased. It seems that, some years ago, claimants sold the timber on the hill land to one Wood, who, in company with others, organized a corporation which became the predecessor in interest of the Snoqualmie Logging Company. By the terms of the contract, the timber was to be removed on or before April 16, 1916, and if not so removed, to revert to the vendors. The company built a logging road across the valley and followed the gulch up onto the hill land. Some two years before this action was begun, the logging company ceased operations, tore up its track, and removed its equipment. The logging company was made a party to this action, but filed no appearance. This case was tried in January and February, 1916. The most persistent claim of appellants is that of damage for the increased cost of removing shingle bolts. The ownership of these bolts thus became material. P. C. Richardson, the president of the company, was called as a witness for the appellants. He testified to the contract, the logging, and that the work had ceased. He was then interrogated by counsel for respondent.

"Q. Whose are these shingle bolts on this land now, yours or Joyce's? A. There might be a question there. I presume the fact that we have abandoned our project we are in the hands of Mr. Joyce in that way, but he has verbally told me that we could use the right-of-way, they would probably be his; unless he wanted to give them to us they are his. Q. They are whose? A. They are Joyce's, I suppose in one sense of the word. In other words, we had the right to remove all merchantable timber by April, 1916, according to our contract. There might be a question of law there whether the fact that we have abandoned that for two years we have lost our right to remove all merchantable timber. Q. Outside of your opinion of it being a question of law, under the contract you have a right to sell any timber on Joyce's

land? He gave you all the timber, didn't he? Mr. Allen: That would not be the best evidence. He says he hasn't any claim to these shingle bolts. The Court: He may state who owns the shingle bolts. Mr. Allen: My objection is, that calls for a legal conclusion. He may state the facts. What rights the contract gave him or didn't give him is a question of law for the court. A. This company owns the shingle bolts, the shingle bolt timber that is there."

It is contended that this testimony was prejudicial; that the ownership of the shingle bolts was a matter of law for the court and not a question of fact for the jury. This would be true if the ownership depended upon the contract alone, but it was the theory of the appellants that they were the owners of the bolts in virtue of an abandonment of the contract. Abandonment is a matter of intention, and to that extent it was competent to inquire of the witness, and it was for the jury, having in mind the contract and the conduct of the logging company, to say whether it was the owner, or whether it had abandoned its right to the property so as to sustain a right in appellants to claim damages. The answer was not a conclusion, as claimed by appellants. Neither was it a response to a collateral inquiry, as respondent insists. It went to the merit of the case and was legally equivalent to a response that the company had not abandoned its interest.

It will be remembered that the Snoqualmie Lumber Company had been made a party to the action and had made default. To aid its cause, counsel for respondent took the stand and detailed a conversation between Richardson, the attorney for the lumber company, and himself to the effect that Richardson said the company would not appear or assert an interest because it had other possible transactions with Joyce and could not afford to antagonize him. An objection was made while the witness was in the midst of his statement. The court ordered the jury to retire pending argument. Whereupon counsel for appellant said: "Never mind. It is not competent but we want to get through with this case."

After the witness had finished, the following colloquy occurred:

"Mr. Allen: I move to strike that. The Court: You want that stricken. Mr. Allen: Not objecting to the conversation he had with Joyce. [It is evident that counsel meant Richardson as no conversation with Joyce had been testified to.] I don't want it to appear that there was anything between him and Joyce [Richardson] to keep him from appearing on the stand. The Court: I will let it stand. The jury may put their own construction upon that. Exception noted."

We think counsel waived his objection. The intention of the witness to testify as he did was evident when the objection was made and waived and the motion to strike does not reach the contention now made that the testimony was hearsay. It was not made to appear that anything occurred that would suggest that the witness had influenced Richardson or prevented him from appearing as a witness. He had already testified. Furthermore, the testimony came in response to like hearsay testimony given immediately before by counsel for appellants. It was clearly not prejudicial, for it tended to sustain appellants' theory of an abandonment.

But there was no prejudice in this testimony. Appellants requested that the question of abandonment be submitted to the jury as a question of fact. The court instructed the jury to determine the fact and to divide the recovery between appellants and the logging company if it found it to be entitled to any damage. The jury found that the logging company was entitled to no damage. This was, in legal effect, a finding that they had abandoned their contract.

IV. One Boyd, who is a banker at Duval, was called as a witness by appellants to prove the value of appellants' property. He testified that his bank was a state bank and loaned money on land. He was then asked: "What is the maximum amount of a loan that you would give Mr. Joyce with this property as security?" He was compelled to answer. This is assigned as error. But we think this was le-

gitimate cross-examination. We can conceive of no surer way to put the testimony of such a witness to the test. To illustrate: The witness, in his direct examination, had fixed a value for the land over which the road runs at about $16,650. He said he would loan about fifty per cent of its value, or $7,500. His testimony was consistent. We find no benefit to respondent or detriment to appellants in this assignment.

V. Following Boyd's testimony, appellants called appellant John Joyce to the stand. The court said: "You have had him three or four times." Exception was taken and error assigned. We find no prejudice, or any betrayal of a "hostile attitude" on the part of the trial judge.

VI. Appellants sought to show that, on adjacent lands, there was a large amount of timber the natural outlet for which was through the gulch by means of the abandoned railroad grade. This testimony was properly stricken as remote, speculative, and not within the range of reasonable probability. The possible sale of a right of way or an abandoned railroad grade to one who *may*, at some future time, negotiate therefor is a pleasing hope, but we find no reason or authority for holding it to be a convertible asset.

VII. The court rejected all testimony tending to show damages to the bottom land. This was proper. No basis of recovery was shown. The condition of the bottom land and its potential uses are not changed by the change in the road. The new road leaves the old road at the head of the gulch and comes into the old road at the bottom of the hill. So far as the testimony goes, the use of the bottom land will not be impaired in any way.

VIII. Appellants offered testimony to show that a small stream flowing in the gulch would, if impounded by a dam, furnish a limited water power. The question of its value, though but remotely established, was submitted to the jury under a proper instruction and decided adversely to appellants.

IX.   It is assigned as error that counsel for the county was guilty of improper conduct.   The record continues:

"The Court:   Address the jury.   (Mr. Ewing addresses the jury.)   Mr. Allen:   I desire to put in the record now that Mr. Ewing in his opening statement to the jury said to the jury that they were the final arbitrators of the question between Joyce and the county, and that they had the county's treasury within their keeping; that any money that would be paid to Joyce by their verdict in this case would be their money, to which I object to the court and ask the court to admonish counsel about making the statement for the reason it is improper argument.   The Court:   Motion denied.   Exception allowed.   The court has given the jury proper instructions.   Go ahead, Mr. Ewing."

The opening statement and the proceedings at the time the remark was made are not brought to us as a part of the statement of fact.   Upon the statement of the court that it had given the jury proper instructions, we must conclude that the jury had been properly admonished at the time the alleged offensive remark was made.

Counsel makes twenty-seven assignments of error.   We have discussed all that are sustained by argument in his briefs and will not pursue the inquiry, except to say that we find no error in the instructions given or refused, nor in the other assignments.   Out of the abundance of the testimony the jury has found that the benefits to appellants will approximate the damages which they will suffer.

We find no reversible error.

Affirmed.

MORRIS and MAIN, JJ., concur.

ELLIS, C. J. (dissenting)—It seems to me that the court erred in excluding all testimony tending to show damage to the bottom land.   I therefore dissent.