## POLSON LOGGING CO. v. UNITED STATES.

### No. 11342.

Circuit Court of Appeals, Ninth Circuit.
March 25, 1947.

L. B. Donley, of Aberdeen, Wash., and F. D. Metzger and Metzger, Blair, Gardner & Boldt, all of Tacoma, Wash., for appellant.

David L. Bazelon, Asst. Atty. Gen., J. Charles Dennis, U. S. Atty., of Seattle, Wash., and Roger P. Marquis and John F. Cotter, Attys., Dept. of Justice, both of Washington, D. C., for appellee.

Before GARRECHT, HEALY, and ORR, Circuit Judges.

HEALY, Circuit Judge.

This case raises the question of the authority of the Secretary of Agriculture to acquire land for the purpose of a road intended to service a national forest.

The property consists of a logging road system in the Humptulips River basin in Washington, extending easterly from the Olympic Peninsula highway to the Olympic National Forest. Appellant owns the road and the bulk of the lands in its neighborhood. Between 1918 and 1939 it logged off these lands and now holds them as part of a large reforestation area. It originally built the road as a logging railroad but removed the rails and ties when the profitable logging of the surrounding area had been completed. By arrangement with appellant, an individual owning timber in the Olympic forest converted the railroad bed into a truck road and logged his timber over it at a charge of 50¢ per thousand board feet of timber hauled. He then assigned his contract to a timber company which began to buy timber in the Olympic forest, but its use of the road for removal purposes was enjoined by appellant.

In January 1942 the United States at the instance of the Secretary of Agriculture instituted suit to condemn the roadway on the allegation that it was to be used for highway purposes in the administration, protection, development, and improvement of the Olympic forest, including the transportation of men, supplies, and equipment needed for these purposes and of the timber removed from the forest. The lands comprised a hundred foot strip some 11 miles in length, containing about 140 acres. The petition cited as the Secretary's authority for the taking the Act of June 4, 1897, as amended, 16 U.S.C.A. §§ 473–482, 551, and the departmental appropriation act of July 1, 1941, 55 Stat. 408. A declaration of taking was contemporaneously filed and estimated just compensation in the amount of $8,280 was deposited with the court. Judgment on the declaration was entered and the United States went into possession. Appellant moved to vacate the judgment and to dismiss the proceedings on the ground that the statutes relied on did not authorize the acquisition. Later, in Octo-

ber 1943, in reliance on the same statutes, the United States filed an amended petition praying for the condemnation of approximately 148 acres of additional lands. In this petition a fee title was sought instead of a permanent easement, as originally asked. There was a declaration of taking and a deposit of an additional sum of $688.

In November of 1943 the court ruled that both declarations of taking were unauthorized and insufficient and ordered the petition and the amended petition dismissed without prejudice to the filing of a new or amended petition. It further ordered that notwithstanding these rulings the cause "shall be considered to be pending," and the deposits were directed to be retained in the registry. Thereupon the United States filed a third declaration of taking in reliance upon the statutes previously invoked, and on the Acts of November 9, 1921, 42 Stat. 212, September 5, 1940, 54 Stat. 867, July 13, 1943, 57 Stat. 560, 23 U.S.C.A. § 1 et seq., and the Act of July 12, 1943, 57 Stat. 392, 415, and supplementary and amendatory statutes. Appellant moved to quash this declaration of taking on the same ground as before. In May of 1944 the government filed its second amended petition in condemnation, conforming to the declaration of taking filed the previous November. The court thereupon entered an order granting the government's motion for judgment on the third declaration of taking, and further, on its own motion vacated and set aside all portions of its earlier order which might be interpreted as denying the authority of the Secretary to condemn. Judgment was then entered on the third declaration, reciting that the United States was entitled to acquire the property under all the statutes cited.

■ It is not disputed that the taking of land for the purposes indicated in the several condemnation petitions is a taking for public use, and it is conceded that authority to condemn exists in every case in which an officer of the government has been authorized to procure real estate for public uses. The Act of August 1, 1888, 40 U.S. C.A. § 257, so provides. The statutory authorization to procure real estate may be evidenced by the making of an appropriation as well as by a specific authorization to acquire. United States v. North American Transp. & Trading Co., 253 U.S. 330, 333, 40 S.Ct. 518, 64 L.Ed. 935; Hanson Lumber Co. v. United States, 261 U.S. 581, 587, 43 S.Ct. 442, 67 L.Ed. 809; United States v. Threlkeld, 10 Cir., 72 F.2d 464, certiorari denied 293 U.S. 620, 55 S.Ct. 215, 79 L.Ed. 708. By his deposit of the estimated compensation for the property the Secretary evinced his understanding that the requisite monies had been made available for its acquisition. But despite the deposit appellant insists that Congress has made no appropriation from which the lands may be paid for.

■ In United States v. Threlkeld, supra, the authority of the Secretary to acquire privately owned lands for use as a logging highway in connection with a national forest was sustained. The court observed that it had long been the policy of Congress to protect, develop and utilize the national forest resources and that for such purpose roads are indispensable. The Threlkeld case was concerned with the Department of Agriculture appropriation act for the fiscal year ending June 30, 1934, 47 Stat. 1432, 1449, which included funds for the "construction and maintenance" of roads and trails; and it was held that the broad authority to construct and maintain embraces the power to acquire the needed land. Subsequent annual appropriations for the Department have not in so many words included funds for the construction of roads or trails;[1] and in reliance on this

---

[1] Typical of the several acts subsequent to 1934 is verbiage of the Act of July 1, 1941, 55 Stat. 408, which is the Department of Agriculture appropriation act for the fiscal year ending June 30, 1942. The appropriation for the Forest Service is as follows: "National forest protection and management: For the administration, protection, use, mainte- nance, improvement, and development of the national forests, including the establishment and maintenance of forest tree nurseries, including the procurement of tree seed and nursery stock by purchase, production, or otherwise, seeding and tree planting and the care of plantations and young growth; the maintenance and operation of aerial fire con-

circumstance appellant argues that Congress purposely withheld from the Secretary authority to construct roads or to acquire lands for such purpose. The government insists that the administrative interpretation of the appropriations has consistently been at variance with this view. It appears to be the fact that since 1935 the Forest Service has continued to construct roads and trails thought necessary; and in the annual reports of the Department Congress was kept informed of the practice. [2] As authority for the expenditure here the government relies on the broad administrative power of the Secretary under 16 U.S. C.A. §§ 473–482, 551, and upon the language of the 1941 appropriation act providing funds for "all expenses necessary for the use, maintenance, improvement, protection, and general administration of the national forests." And in its final ruling on the case the trial court appears to have adopted the government's view. [3]

■ We are disposed to do likewise. There is nothing in the legislative reports to which our attention has been called indicative of a studied purpose to deny the Secretary authority to construct needed roads, or, where necessary, to acquire rights-of-way for them. [4] And there is no reason dehors the statute for believing that, beginning with 1935, Congress regarded the program of road and trail building in the development of the national forests as having been finally completed. The continuance of construction with the knowledge and silent acquiescence of Congress is confirmatory of the belief that the broad powers of improvement, protection, and administration lodged with the Secretary were accepted as sufficient authority to build such roads as were from time to time deemed essential.

■ There is another and, we think, a conclusive reason for upholding the Secretary's interpretation of his authority. The Department of Agriculture appropriation act making funds available for the fiscal year ending June 30, 1944, 57 Stat. 392, was approved July 12, 1943. Among other

---

trol by contract or otherwise; the maintenance of roads and trails and the construction and maintenance of all other improvements necessary for the proper and economical administration, protection, development, and use of the national forests, including experimental areas under Forest Service administration * * * and all expenses necessary for the use, maintenance, improvement, protection, and general administration of the national forests, including lands under contract for purchase or for the acquisition of which condemnation proceedings have been instituted under the Act of March 1, 1911 (16 U.S.C. 521 [16 U. S.C.A. § 521]), and the Act of June 7, 1924 (16 U.S.C. 471, 499, 505, 564–570 [16 U.S.C.A. §§ 471, 499, 505, 564–570]), lands transferred by authority of the Secretary of Agriculture from the Resettlement Administration to the Forest Service, and lands transferred to the Forest Service under authority of the Bankhead-Jones Farm Tenant Act [7 U. S.C.A. § 1000 et seq.] $11,050,411. * * *"

[2] In the Secretary's annual report for 1936 it was stated (p. 114) that during the year there had been completed "improvements on 22 miles of flood damaged highways, on 236 miles of forest highways, and on 436 miles of highways through other public lands built by the Bureau of Public Roads, and 5,684 miles of forest roads, and 1,965 miles of trails built by the Forest Service." The report stated that the current program includes 716 miles of forest highways. Again, the 1937 annual report calls attention to the current construction of "many miles of forest roads and trails." The annual reports for 1938 and 1943 evidence the same sort of activities on the part of the Forest Service, those in 1943 being reportedly at the request of the War Production Board.

[3] Because of the rulings of the trial court prior to its final orders in the case, appellant argues that the United States cannot now rely upon the acts cited in the first two declarations of taking. As we understand the contention it is that the court's order entered in November of 1943 became the law of the case, thereafter binding on the court. We are satisfied that the court was not foreclosed from reexamining the validity of its earlier rulings in the pending suit. United States v. Fullard-Leo, 9 Cir., 156 F.2d 756, 757; Messinger v. Anderson, 225 U.S. 436, 444, 32 S.Ct. 739, 56 L. Ed. 1152.

[4] Consult House Report No. 829, 73d Congress, 2nd Sess., pp. 10–11; House Report No. 385, 74th Congress, 1st Sess., p. 8.

things, it appropriated funds "for carrying out the provisions of Section 23 of the Federal Highway Act approved November 9, 1921 (23 U.S.C. 23)." Section 23(a) of the Federal Highway Act, 23 U.S.C.A. § 23 (a), provides: "Fifty per centum, but not to exceed $3,000,000 for any one fiscal year, of the appropriation made or that may hereafter be made for the survey, construction, reconstruction and maintenance of forest roads and trails shall be expended under the direct supervision of the Secretary of Agriculture in the survey, construction, reconstruction, and maintenance of roads and trails of primary importance for the protection, administration, and utilization of the national forests, or when necessary, for the use and development of the resources upon which communities within or adjacent to the National forests are dependent, and shall be apportioned among the several States, Alaska, and Puerto Rico by the Secretary of Agriculture, according to the relative needs of the various national forests, taking into consideration the existing transportation facilities, value of timber, or other resources served, relative fire danger, and comparative difficulties of road and trail construction."

■ Prior to 1943 the Federal Highway Act, Section 2, defined the term "construction" as excluding "costs of rights of way." In this respect the act was amended July 13, 1943, that is to say, one day after the enactment of the Department of Agriculture appropriation act for the fiscal year ending June 30, 1944. In the amendment the definition of the term "construction" was enlarged so as to include the costs of rights-of-way. Hence, since the amendment the Federal Highway Act authorizes the Secretary not only to construct roads giving access to national forests but to acquire needed rights-of-way. We are satisfied that the appropriation act and the amended Federal Highway Act must be read together.

■ Appellant argues to the contrary. It contends that the two acts are unrelated, and in effect insists that during the fiscal year covered by the appropriation the funds provided could not lawfully be used for the purposes set out in the amended Highway Act unless the appropriation act were itself amended. This does not appear to us a tenable interpretation of the legislative purpose. The bills for the two acts were simultaneously before Congress. The rational assumption is that Congress intended that the funds appropriated to the Department should be available for whatever function the Department was authorized to perform during the fiscal year in which the funds were to be expended. Appellant relies on the often stated rule that a statute adopting the provisions of another is to be construed as of the date of its passage. As ordinarily applied there is no doubt of the soundness of the rule. But canons of construction are mere aids to the determination of legislative intent; and the common sense of the present situation is that Congress intended that funds appropriated for carrying out the provisions of the Federal Highway Act during the specified year were to be expended in harmony with the act as it existed during that year.

■ Some other points remain to be noticed. By the amended petition and declaration of taking filed in October of 1943 the government included about 100 acres of land for use as a source of gravel for the maintenance and improvement of the roads on the other lands taken. Appellant contends that this amounts to an attempt to enlarge the boundaries of the national forest. We think not. Since the Secretary was authorized to build and maintain the road he was empowered to acquire the necessary material for that purpose. The furnishing of materials is incidental to the construction and maintenance of the road. Cf. Cameron Development Co. v. United States, 5 Cir., 145 F.2d 209; United States v. Rayno, 1 Cir., 136 F.2d 376. There was evidence that the lands contained gravel.

On the matter of damages, the witnesses for the United States testified that the best use of the land taken was for reforestation and as a fire-prevention trail, the value for which uses was said not to exceed $1.50 per acre. Appellant, on the other hand,

claimed that the highest and best use of the property was as a logging road for the removal of timber from the Olympic National Forest; and it complains of the rejection of its offer of proof predicated on this theory.[5] The offers of proof rested upon the assumption that standing timber on the forest would be sold to private loggers by the Forest Service at the rate of 20,000,000 feet a year and that a private owner of the road would collect from the loggers tolls for its use in the removal of the timber. While the offers admitted that there were other routes which could be developed to remove the timber in the event of the inauguration of the logging program, it was asserted or assumed that the road under condemnation was the best route. It was attempted to buttress the assumptions by resort to statements said to have been made by officials of the Forest Service indicative of a policy of cutting timber at the rate named.

The court excluded the evidence primarily for the reason that it was speculative, observing that "the whole policy of the Forest Service might completely change." We agree. While it is true that the road in question was adaptable for use as a logging road, there was no sufficient showing of a reasonable probability that the assumed combination of events would occur within a reasonable time. Olson v. United States, 292 U.S. 246, 54 S.Ct. 704, 78 L.Ed. 1236. Consult further Chicago, M. & St. P. Ry. Co. v. Alexander,

47 Wash. 131, 91 P. 626; Meskill & Columbia R. R. Co. v. Luedinghaus, 78 Wash. 366, 139 P. 52, 51 L.R.A.,N.S., 1090; King County v. Joyce, 96 Wash. 520, 165 P. 399. The only actual facts to proceed on were that the road is in existence and that it affords access to the National Forest. The rest is conjecture. What policy the government or the Forest Service might pursue in the future was too speculative to affect the market value of the property while in private ownership.

Appellant was given all legitimate leeway in proving damages. It was permitted to show the estimated cost of reproduction of the road, less depreciation; and evidence was admitted on its behalf as to the amount of tolls collected in the past. A witness for appellant gave his opinion as to the value of the road, excluding consideration of the timber in the National Forest.[6] And while the court properly charged the jury that they should not consider the government's need for the property, nor its value to the government upon acquisition, they were told that nevertheless, if they found that the property has a special utility or availability value not only to the government, but to others, then such value should be considered in connection with what the jury might find a purchaser would pay for the property.

This disposes of all points having sufficient merit to justify discussion.

Affirmed.

---

[5] Appellant disclaims any right to recover the peculiar value of the property to the government. United States v. Chandler-Dunbar Water Power Co., 229 U.S. 53, 80, 81, 33 S.Ct. 667, 57 L.Ed. 1063; United States v. Miller, 317 U.S. 369, 375, 63 S.Ct. 276, 87 L.Ed. 336, 147 A.L.R. 55.

[6] The jury returned a verdict for $6,500, which, it will be noted, was less than the government's deposit.