[No. 29111.   Department One.   November 1, 1943.]

A. M. ABEL et al., Respondents, v. DIKING & DRAINAGE
IMPROVEMENT DISTRICT No. 4 et al., Appellants.[1]

[1]Reported in 142 P. (2d) 1017.

*Warner Poyhonen* and *Donn F. Lawwill,* for appellant.

*T. H. McKay* and *A. M. Abel,* for respondents.

STEINERT, J.—Plaintiffs brought action seeking to have certain diking and drainage improvement district assessments and maintenance charges canceled of record, and the title to the lands affected thereby quieted in the plaintiffs. Upon a trial by the court, a decree was entered granting the relief prayed for in the complaint. Defendants, comprising the diking and drainage improvement district and its commissioners, appealed.

Respondents, A. M. Abel and May R. Abel, are husband and wife and are the present owners in fee simple of forty acres of vacant and unoccupied land lying wholly within the corporate limits of the city of Aberdeen, Washington, and situated also within Diking & Drainage Improvement District No. 4 of Grays Harbor county. We shall hereinafter refer to A. M. Abel as though he were the sole respondent, and to the diking and drainage improvement district, which is a municipal corporation, as though it alone were the appellant.

On or about December 30, 1939, Grays Harbor county became the purchaser of the lands here in question, through a general tax foreclosure sale at which there was no bidder other than the county. The delinquent general taxes standing against the lands at that time, and for which the county purchased the property, amounted to $3,431.32. At the time of the sale to the county there were also certain unpaid diking and drainage improvement district assessment liens, together with maintenance assessments, against the lands amounting to $7,310.94, a portion of which amount was included in the bonded indebtedness of the diking and drainage improvement district.

On or about April 6, 1942, the board of county commissioners of Grays Harbor county entered an order directing the county treasurer to offer the lands for sale by the county for a sum not less than $107. The treasurer thereupon duly published notice of such sale to be held May 16, 1942. The notice stated that the minimum bid for the property would be $107; it also contained a provision reading as follows:

"The Above Described real estate will be sold subject to the lien of any or all local assessments falling due after the date of this sale, or of any or all drainage or sewerage improvement district assessments outstanding against said real estate."

At the time of the sale by the county treasurer to the respondent, on May 16th, the diking and drainage improvement district assessments against the lands, then due and payable, amounted to $2,741.65, and the maintenance assessments likewise due and payable aggregated $1,288.81. At that time, also, there were unpaid diking and drainage improvement district assessments representing bond installments not yet due, amounting to $3,100.48.

Respondent, being the highest bidder at the sale on May 16th, became the purchaser of the lands for the sum of $605. On December 8, 1942, the county treasurer executed and delivered to the respondent a deed to the property, in the form prescribed by Rem. Rev. Stat., § 11295 [P. C. § 6882-134]. That statute did not require that the property

be conveyed subject to the lien of all drainage or diking or sewerage improvement district assessments or installments thereof (as contemplated by Rem. Rev. Stat., § 4439-4 [P. C. § 1945-86c], *infra*), nor did the deed from the county treasurer to the respondent contain any such restriction. The granting clause of the deed followed the statutory form and read as follows:

"Now THEREFORE, Know ye that I, Minnie Swisher, County Treasurer of said County of Grays Harbor, State of Washington, in consideration of the premises and *by virtue of the statutes of the State of Washington in such cases made and provided,* do hereby grant and convey unto A. M. Abel his heirs and assigns forever, the said real estate hereinbefore described, *as fully and completely as the said party of the first part can* by virtue of the premises convey the same." (Italics ours.)

Upon these facts, as hereinbefore set forth, the trial court, after making findings of fact and drawing conclusions of law, entered judgment and decree quieting respondent's title to the lands as against all of the foregoing assessments and charges, including not only such as were due and payable at the time of the sale of the property by the county to the respondent, but also those assessments which were not then due and which, for the greater part, are yet not due.

The only question involved in this appeal is whether respondent took title to the lands free and clear of the lien of the diking and drainage improvement district assessments *which were not yet due at the time of the sale of the property by the county to the respondent on May 16, 1942.* The answer to that question depends upon whether the sale to the respondent is controlled by Rem. Rev. Stat., § 4439-4, as appellant contends, or whether it is governed by Rem. Rev. Stat., § 11294 [P. C. § 6882-133], as respondent now asserts.

Rem. Rev. Stat., § 4439-4, enacted in 1923 (Laws of 1923, chapter 46, p. 126, § 11), reads, in part, as follows:

"Property subject to a drainage or diking or sewerage improvement district assessment, acquired by a county pursuant to a foreclosure and sale for general taxes, when of-

fered for sale by the county, shall be offered for the amount of the general taxes for which the same was struck off to the county, together with all drainage or diking or sewerage improvement district assessments or installments thereof, due at the time of such resale, including maintenance assessments, and supplemental assessments levied pursuant to the provisions of section 4439-6, coming due while the property was held in the name of the county; *and the property shall be sold subject to the lien of all drainage or diking or sewerage improvement district assessments or installments thereof not yet due at the time of such sale, and the notice of sale and deed shall so state.* Provided, that the county board may in its discretion, sell said property at a lesser sum than the amount for which the property is offered in the notice of sale."

We have italicized that portion of the statute above quoted which is particularly applicable to this case, and on which appellant relies.

It is apparent that by that provision the statute expressly preserves a lien upon property acquired by a county at a general tax foreclosure sale, for and to the extent of all drainage and diking and sewerage improvement district assessments, or installments thereof, not yet due at the time such property is sold by the county.

■ The record does not disclose whether or not the tax foreclosure proceeding and the deed by which the county originally acquired title made any mention of the diking and drainage improvement district assessments. In the absence of any proof to the contrary, however, it must be presumed that such proceeding and deed complied with the mandatory requirements of Laws of 1923, chapter 46, p. 125, § 11, now appearing as Rem. Rev. Stat., § 4439-3 [P. C. § 1945-86b], which provides, in part, as follows:

"Any property in any drainage or diking or sewerage improvement district sold under foreclosure for general taxes shall remain subject to the lien of all drainage and diking or sewerage improvement district assessments or installments thereof not yet due at the time of the decree of foreclosure and the *complaint, decree of foreclosure, order of sale, sale, certificate of sale and deed shall so state.*" (Italics ours.)

■ But whether that proceeding and that deed complied or failed to comply with the last mentioned statute is immaterial. In either event, the county acquired no greater title than that authorized by the statute. We have specifically so held, in *Baldwin v. Frisbie,* 149 Wash. 294, 270 Pac. 1025. Commenting on the above provision quoted from Rem. Rev. Stat., § 4439-3, this court said:

"Here is an express declaration on the part of the legislature that the property when sold for general taxes shall remain subject to the lien of all drainage assessments not due at the time of the foreclosure. The fact that the foreclosure proceedings by which the county acquired title and the deed to it made no mention of the drainage assessments does not pass the title to the property to the county free and clear thereof, when the statute says that it shall be taken subject to the drainage assessments not then due. The failure of the proper officers to foreclose for the general taxes subject to the drainage improvement assessment cannot have the effect of conveying to the county a greater title than that authorized by the legislature. The county's title must rest upon the statutory requirements, and not upon a failure of the proper officers to comply therewith. It then seems clear that the county took the property subject to the drainage improvement assessment not due at the time it acquired title."

For similar reasons, it is immaterial that the deed from the county to the respondent made no mention of the diking and drainage improvement district assessments. In this connection, it will be recalled that the notice of the sale held May 16, 1942, did recite that the property was to be sold subject to the lien of all such assessments, although we do not now attach any special importance to that fact.

We have heretofore quoted Rem. Rev. Stat., § 4439-4, which specifically preserves the lien of such assessments not yet due at the time of the sale of the property by the county. Touching that provision, this court, in the case of *Baldwin v. Frisbie, supra,* also said:

"It is true that the deed does not expressly convey the property to the respondent [purchaser] subject to the drainage improvement district assessments not due at the time of the sale to him; but his title must be determined from

the statute and he cannot get a better title than that authorized thereby, as already indicated when discussing § 4439-3. We must conclude that the property was sold under the declaratory part of § 4439-4, and that the respondent took title subject to the drainage improvement assessments not then due."

If the sale to the respondent is governed by Rem. Rev. Stat., § 4439-4, then there can be no doubt that respondent took title to the lands subject to the diking and drainage improvement district assessments which were not due at the time of that sale. Respondent does not dispute that conclusion, but contends that the sale by the county to him is governed, not by the statute just referred to, but rather by Rem. Rev. Stat., § 11294, enacted in 1927 (Laws of 1927, chapter 263, p. 610, § 1). That section, in so far as it is material here, reads as follows:

"Real property hereafter or heretofore acquired by the several counties of the state of Washington for taxes shall be subject to sale by order of the board of county commissioners of the several counties of this state at any time after the counties shall have received a deed therefor, when in the judgment of the board of county commissioners they deem it for the best interests of the county to sell the same, and when the board of county commissioners desires to sell any property so acquired, they shall enter an order upon their records fixing a minimum price below which said property shall not be sold, and directing the county treasurer to sell such portions of such property as they may determine to sell from time to time, and it shall be the duty of the county treasurer upon receipt of such order to publish once a week for three consecutive weeks a notice of the sale of such property in a newspaper printed and published in the county where the land is situated: . . . and all sales so made shall be to the highest and best bidder at such sale, . . . The person making the highest bid shall become the purchaser of said property. . . ."

It is respondent's contention that this later statute authorized the county to sell such lands at a price not less than the established minimum bid, free and clear of *all* diking and drainage improvement district assessments, regardless

of whether they were due at the time of such sale or were to become due thereafter.

It will be noted that this section of the statute does not refer specifically to property subject to drainage or diking or sewerage improvement district assessments acquired by a county pursuant to a foreclosure and sale for general taxes, but refers generally to any and all real property theretofore or thereafter acquired by the county for taxes; further, that this section does not require that the sale by the county shall be made subject to diking and drainage improvement district assessments, but is silent upon that subject.

Respondent argues that since the provisions with reference to the lien of drainage, diking, and sewerage improvement district assessments, as set forth in Rem. Rev. Stat., § 4439-4, enacted in 1923, were not carried forward into Rem. Rev. Stat., § 11294, enacted in 1927, therefore the later statute by implication repealed those provisions of the earlier statute.

■ Repeals by implication are ordinarily not favored in law, and a later act will not operate to repeal an earlier act except in such instances where the later act covers the entire subject matter of the earlier legislation, is complete in itself, and is evidently intended to supersede the prior legislation on the subject, or unless the two acts are so clearly inconsistent with, and repugnant to, each other that they cannot, by a fair and reasonable construction, be reconciled and both given effect. *State ex rel. Spokane & Eastern Branch of the Seattle First Nat. Bank v. Justice Court,* 189 Wash. 87, 63 P. (2d) 937, and cases therein cited; 25 R. C. L. 920, Statutes, § 170.

■ Applying these principles as the governing test, we are of the opinion that § 11294 does not by implication, or otherwise, repeal § 4439-4. The later statute, § 11294, does not cover the entire subject matter of the earlier legislation. Section 11294 relates more particularly to the matter of procedure to be followed when real property, in general, acquired by the county for taxes, is thereafter sold, while

§ 4439-4 is more nearly concerned with the protection to be afforded to a certain class of liens, in the event that property upon which such liens shall attach has in the meantime been acquired by the county and is subsequently put up for sale. There is nothing in the later act which evidences any intention on the part of the legislature to supersede the prior legislation. There is no such inconsistency or repugnancy between the two statutes as will prevent their being reconciled with each other and both given effect. There is a field in which each can operate without impinging on the other.

There is yet another reason for the conclusion at which we have arrived. Section 11294, quoted above, is not to be considered as though it were an entirely new subject of legislation in this jurisdiction or as introducing a course of procedure different from any that had obtained therein before. That section had its genesis at least as early as 1903. See Laws of 1903, chapter 59, § 1. The fact is that Rem. Rev. Stat., § 11294, passed in 1927, merely amends § 133 of chapter 130, p. 317, Laws of the Extraordinary Session of 1925. Chapter 130 of the Laws of 1925 is a comprehensive act relating to taxation in general and regulating the assessment, levy, and collection of both real and personal property taxes. That act covers ninety-seven pages and comprises one hundred thirty-nine sections, dealing in detail with the general subject of taxation. Section 138, p. 319, of the 1925 act expressly repeals an enumerated schedule of more than sixty prior acts, besides many sections of other acts, ranging in date from 1881 to 1925. Significantly, however, the schedule of repealed acts does not include nor make any reference to chapter 46, Laws of 1923, which contains the section now appearing as Rem. Rev. Stat., § 4439-4, discussed at length above. The conclusion is inescapable, we think, that, when the legislature enacted chapter 130, p. 227, Laws of 1925, Ex. Ses., it not only had no intention to repeal the act of 1923, or any part thereof, but indicated its intention to leave the earlier act intact and operative. Rem. Rev. Stat., § 11294, which is

part of the act of 1927, had no greater effect upon the act of 1923 than did the act of 1925.

We conclude, therefore, that Rem. Rev. Stat., § 11294, did not by implication repeal Rem. Rev. Stat., § 4439-4.

█  Respondent advances a further argument, based upon the holdings in certain cases arising out of the commercial waterway district act of 1923 (Laws of 1923, chapter 38, p. 97; Rem. Rev. Stat., §§ 9776-1 to 9776-10 [P. C. §§ 1372-1 to 1372-10], inclusive). It is true that in those cases we held that, when a county at a tax foreclosure sale purchases property which is subject to commercial waterway district assessments and the county thereafter sells the property to a third person, the person purchasing from the county takes title free and clear of all such commercial waterway district assessments, whether due or to become due. However, Rem. Rev. Stat., § 9776-9 [P. C. § 1372-9], which is part of the commercial waterway district act of 1923, provides that, when lands or properties subject to the lien of any waterway district assessments are sold for taxes, the whole amount of such assessments remaining unpaid shall be due and payable and shall be included in the aggregate amount of taxes for which the lands or properties are sold. The obvious difference between that statute and Rem. Rev. Stat., § 4439-4, is that the former merges the unpaid waterway district assessments into the amount for which the property is sold at a general tax foreclosure sale, while the latter statute expressly reserves the lien of diking, drainage, and sewerage improvement district assessments which become due after a resale by the county. The difference in the provisions of the two statutes leads naturally to a difference in the results accomplished by the sale of the properties by the county to a third person.

Respondent argues finally that, since the commercial waterway district statute and the diking and drainage district statute are basically alike, they should be given the same interpretation, to the end that the law with reference to foreclosures for general taxes will thereby operate uniformly upon all property within the various kinds of im-

provement districts. That presents a question, however, that should be addressed to the legislature rather than to the courts. It is significant that the commercial waterway district act and the diking and drainage district act were passed by the same legislature within a few days of each other. The legislature for some reason saw fit to make a distinction between the two kinds of improvement districts. The legislature can likewise, if it sees fit, place them on the same basis. Until it does so, however, we are compelled to apply the law as it is written.

The judgment and decree will be modified to conform to the views herein expressed.

SIMPSON, C. J., JEFFERS, GRADY, and MALLERY, JJ., concur.

[1]Reported in 142 P. (2d) 1015.