[No. 41774. En Banc. August 5, 1971.]

*In the Matter of the Petition of the* CITY OF SEATTLE. THE CITY OF SEATTLE, *Appellant,* v. SEATTLE-FIRST NATIONAL BANK *et al., Respondents.*

*A. L. Newbould, G. Grant Wilcox,* and *Donald H. Stout,* for appellant.

*Monheimer, Schermer, Van Fredenberg & Smith, John M. Schermer, J. Dimmitt Smith, Richard W. Pierson,* and *Stephen P. Ryder,* for respondents.

ROSELLINI, J.—This is an appeal from an order in which the trial court awarded to the respondent condemnees certain attorneys' and expert witnesses' fees and costs pursuant to RCW 8.25.

The record shows that after failing in its attempted negotiated acquisition, the City of Seattle instituted condemnation proceedings to acquire respondents' 90-acre tract of beach and tideland property at the southerly tip of Magnolia Bluff in Seattle. Its largest offer prior to trial was $660,000. The jury found the value of the tract to be $3,000,000. The city appealed from the judgment entered upon this verdict, but later abandoned the condemnation as well as the appeal.

Prior to abandonment, a hearing was held to determine the amount of fees which should be awarded to the respondents under RCW 8.25.070, providing that the court may award reasonable attorneys' fees and reasonable expert witnesses' fees actually incurred where the verdict exceeds by more than 10 per cent the highest written offer made by the condemnor more than 30 days prior to trial. The court also was asked to take note of RCW 8.25.030, which provides for the awarding of such fees where the condemnation is abandoned after the entry of an order of public use and necessity.

The court determined that the respondents were entitled to be reimbursed for their attorneys' fees and expert witnesses' fees in the total amount of $443,974.38.

The city does not deny that these fees were actually incurred by the respondents. It urges, however, that some of the expert witnesses' services were unnecessary and that

the attorneys' fees, while not unreasonable as between client and attorney, are an unreasonable burden upon the taxpayer who must ultimately pay them.

In regard to the expert witnesses' fees, it appears that although a hearing was held to determine what costs were reasonably incurred by the respondents, the city offered no testimony or other evidence that the services of the experts were not reasonably required to establish the value of the property. It argued to the trial court, as it does to this court, that a large part of the services rendered by these experts was useful to the respondents in planning the development of their land. There was no attempt made to segregate those services which the city contended were unnecessary from those which it conceded were necessary, however. The trial court found that all of the services for which it allowed the recovery of witnesses' fees were necessary to present to the jury the respondents' concept of the value of their land.

It is true that the fees are large, but the problems involved were extensive and complicated, and there is no doubt that the experts hired by the respondents rendered services of great significance in establishing the value of their land.

The city maintains that some of the testimony of these witnesses was redundant. However, it does not point to any occasion where it objected to the testimony on this ground at the trial; and this contention, assuming it has any merit, has been raised too late in the proceedings to be considered as a proper ground for setting aside the judgment of the trial court.

The record shows that the trial court gave serious attention to the matter of expert witnesses' fees and that it did not allow all of the fees requested by the respondents. We are not convinced that the court abused its discretion in awarding the fees of which the city complains.

On the matter of attorneys' fees, the respondents had, prior to trial, entered into a written contract with their attorneys for a contingent fee based upon the amount by

which the verdict should exceed the city's original offer. Under this contract, the attorneys were entitled to one third of the increase if the court should award that amount as attorneys' fees to be paid by the condemnor. It provided for a maximum fee of 15 per cent if the court should award 15 per cent or less.

Attorneys who appeared as witnesses for the respondents at the hearing testified that, in their experience, contingent fees were customary in condemnation proceedings and ranged from 15 per cent to 33⅓ per cent of the increase over the condemnor's offer, depending upon the difficulties involved in the particular case. They all testified that, in their opinions, such fees were reasonable. The city offered no evidence to the contrary.

The trial court considered this testimony and carefully reviewed the factors which are pertinent to the fixing of fees under canons 12 and 13 of the Canons of Professional Ethics. The court determined that, independently of the contract between the respondents and their attorneys, a fee of 15 per cent of the difference between the city's offer and the jury's verdict was reasonable. We have heretofore approved the allowance of attorneys' fees in a condemnation matter based upon a percentage of the amount by which the verdict exceeds the condemnor's offer. *In re Renton,* 79 Wn.2d 374, 485 P.2d 613 (1971).

The city admits that the fee is reasonable as between attorney and client, but contends that it was not the legislative intent to make the condemnee whole. We have previously examined these statutes and concluded that it was indeed the legislative intent to make the award more nearly equal to the actual loss of the condemnee. *State v. Roth,* 78 Wn.2d 711, 479 P.2d 55 (1971).

It is true that the taxpayer must pay the fee. It is, however, this same taxpayer who placed the respondents' property in jeopardy and made it necessary for them to defend its value. Judging from the amount of the verdict, which was based upon evidence which the jury found credible, the taxpayer threatened to confiscate that property and

would have done so had not the respondents been able to secure the services of attorneys and witnesses who were able to convince the jury (also composed of taxpayers) that the property had a value far in excess of that which the city placed upon it for condemnation purposes.

We deem it safe to assume that that same taxpayer will benefit from the increased value of the land upon the tax rolls, now that the condemnation has been abandoned.

We are not convinced that a fee which is reasonable as between attorney and client can be viewed as excessive simply because a third party is required to reimburse the client.

The final argument of the city is that the legislature has defined the meaning of the word reasonable, as used in these statutes, by its amendment of one of them, RCW 8.25.070, by Engrossed Senate Bill No. 363 (Laws of 1971, Ex. Ses., ch. 39), providing for the allowance of fees based solely on minimum bar fee schedules for trial and hourly rates. It is true that the legislature has thus limited the amount of attorneys' fees which the state will pay the condemnee in a condemnation proceeding, but it has not placed a limitation upon the fees which the attorney may charge his client for his services in such an action. Thus the legislature has seen fit to provide that, in certain cases, the condemnee shall not necessarily be made whole. This is a substantive change in the law, not a mere interpretation.

The city does not suggest that Engrossed Senate Bill No. 363 was intended to have retroactive effect. We do not find it applicable in the action before us.

The trial court conscientiously reviewed the trial of this case and considered the evidence before it on the hearing to determine fees. It took into consideration all of the arguments of the city and the factors which are pertinent under canons 12 and 13. Its exercise of discretion was sound.

The judgment is affirmed.

HAMILTON, C.J., FINLEY, HUNTER, HALE, NEILL, STAFFORD, and WRIGHT, JJ., and RYAN, J. Pro Tem., concur.

Petition for rehearing denied October 28, 1971.