[No. 1629-42152-1.    Division One—Panel 2.    July 23, 1973.]

THE CITY OF RENTON, *Appellant,* v. SCOTT PACIFIC TERMINAL, INC., *et al., Respondents.*

*Shellan & Pain* and *John K. Pain, Jr.*, for appellant.

*Bogle, Gates, Dobrin, Wakefield & Long, Peter D. Byrnes, Ronald T. Schaps,* and *Jay H. Zulauf,* for respondents.

CALLOW, J.—The City of Renton commenced eminent domain proceedings to acquire 11.8 acres of waterfront property of the condemnee for a park. The property was in use by the owner as a log dump and was improved with fixtures necessary for handling the logs. Renton appeals from the judgment based on the jury award of $825,000 to the defendant property owners.

The questions raised by the appellant concern the scope of cross-examination of opposing expert real estate appraisers; the admissibility of testimony concerning the volume of business conducted on the real property, together with its improvements, and the use of such testimony as a gauge to fair market value of the improvements; and whether an instruction given directed the jury improperly to consider lost profits as an element of damages to the condemnee. Further, the condemnor raises questions as to whether evidence of the business conducted on the property may be admitted and, if so, to what extent; whether the replacement cost of improvements is admissible as evidence of their value on behalf of a condemnee and, if so, to what purpose such evidence could be used; whether a condemnee's appraiser can testify concerning a comparable sale of property unknown to him until the condemnor's appraisers testified to it; and whether a temporary economic decline in the area or the difficulty in obtaining governmental permits for land use are appropriate as evidence concerning value. In addition, questions were raised concerning the attorneys' fees, expert witness fees, and the interest awarded.

■ A real estate appraiser testifying as an expert witness on behalf of an opposing party may be cross-examined as to prior appraisals made by such witness of the same, adjacent or similar properties. *Chicago, M. & P.S. Ry. v. True,* 62 Wash. 646, 114 P. 515 (1911). It is within the discretion of the trial judge as to whether such prior ap-

praisals were so remote in time or place as to be irrelevant to test the competency, credibility, knowledge, memory or accuracy of the witness. *State v. Elder,* 70 Wn.2d 414, 423 P.2d 533 (1967); *Winslow v. Mell,* 48 Wn.2d 581, 295 P.2d 319 (1956); *Bussard v. Fireman's Fund Indem. Co.,* 44 Wn.2d 417, 267 P.2d 1062 (1954); *King County v. Joyce,* 96 Wash. 520, 165 P. 399 (1917). *See also* F. Wellman, *The Art of Cross-Examination,* ch. 5 (4th ed. 1936). Cross-examination of the expert real estate appraisers was conducted within permissible limits and the bounds of the discretion of the trial court. The cross-examination as to previous appraisals made by the opposing appraisers was restricted to testing the validity of their assessment of the fair market value of the subject property at the time of trial. The jury was instructed:

As the respondent's entire property is being acquired, just compensation is the fair market value of the property measured as of the day of trial.

The content of the testimony brought out on cross-examination was restricted to its proper use.

The admission of testimony on behalf of the condemnee of the volume of business conducted on the property was challenged as was whether the condemnee's appraisers could base their opinion of the value of the improvements on the land on the income produced by the business use of those improvements.

The character and volume of business conducted on the property which is subject to condemnation is admissible for the purpose of showing a use for which the land is available. 4 P. Nichols, *Eminent Domain* § 12.3121(1) (rev. 3d ed. J. Sackman 1971); *Chicago, M. & P.S. Ry. v. True, supra;* WPI 151.05, 6 Wash. Prac. 370 (1967). In *Chicago, M. & P.S. Ry. v. True,* the court approved the admission of testimony concerning the area through which the landowner's business extended where the jury was instructed that such evidence was only to be considered for the purpose of showing the use to which the property was adopted. It is argued that there was no issue as to the use to which

the property could be put; and, therefore, the introduction of testimony of this subject should have been excluded. We find no error in the utilization to which this testimony was directed by the instructions given. The court informed the jury:

> However, evidence, if any, that a business is now operated on the property is admissible solely as proof of one of the uses to which it could be put.

Moreover, the condemnee was entitled to show that the use of the property as a log dump was an available interim use which, while not the highest and best use to which the property could be put, was a use which enhanced its value. *See* 4 P. Nichols, *Eminent Domain* § 12.2(3) (rev. 3d ed. J. Sackman 1971).

■ Further, the condemnee's appraisers could base their opinion of the value of the improvements on the land on the income produced by the business use of those improvements. Such use was an element available as a guide to the appraisers in arriving at the value of the land. As said in *Seattle & M.R.R. v. Roeder*, 30 Wash. 244, 263, 70 P. 498, 94 Am. St. R. 864 (1902):

> If a piece of land taken contains valuable improvements, those improvements apart from the lands may not be considered; yet certainly the character, nature, and extent of the improvements, and the revenue derived therefrom, are as essential to be considered in arriving at the value of the land as the land itself or the uses to which it may be put.

The court's instruction No. 7 read:

> The amount of an award in condemnation proceedings is limited to the fair market value of real property and fixtures attached. In no case can damages be allowed for the loss of profits of a business maintained on the property or damage to personal property. This is true even though the business cannot be moved elsewhere.
>
> However, evidence, if any, that a business is now operated on the property is admissible solely as proof of one of the uses to which it could be put.

The objection made is that this instruction wrongfully

combines the concept of limiting damages to the value of the property and its fixtures and that damages should not be allowed for lost profits. Objection is also made that the instruction did not direct the jury to disregard the volume of business as a measure of value. We disagree holding that the instruction properly stated the law. *See Puget Sound Power & Light Co. v. Puyallup,* 51 F.2d 688 (9th Cir. 1931).

The profits of a business conducted upon the land taken may not be shown to determine the compensation which the owner should receive. *Chicago, M. & P.S. Ry. v. True, supra; Tacoma v. Nisqually Power Co.,* 57 Wash. 420, 107 P. 199 (1910); 4 P. Nichols, *Eminent Domain* § 12.3121(1) (rev. 3d ed. J. Sackman 1971); 5 P. Nichols, *Eminent Domain* § 19.3(1) (rev. 3d ed. J. Sackman 1969); 29A C.J.S. *Eminent Domain* § 162 (1965); A. Jahr, *Eminent Domain* § 150 (1953); Annot., 7 A.L.R. 163 (1920). Courts have so held since the amount of profits gained from a business depends upon the fortune, skill and good management with which the business is conducted. These elements furnish no basis for determining the value of the property but rather are indicative of the competence of the owner. 4 P. Nichols, *Eminet Domain* § 12.3121(1) (rev. 3d ed. J. Sackman 1971); 5 P. Nichols, *Eminent Domain* § 19.3(1) (rev. 3d ed. J. Sackman 1969); A. Jahr, *Eminent Domain* § 150 (1953). *See also Los Angeles v. Deacon,* 119 Cal. App. 491, 7 P.2d 378 (1932).

The three sentences in the instruction each correctly state the law. When compared with WPI 151.05, it can be seen that the instruction given is merely a paraphrase of the law therein set forth. The instruction properly guided the jury.

■ A challenge is made to the failure of the court to give the condemnor's proposed supplemental instruction No. 2. No exception was taken to the failure to give this instruction, and we may not consider the claimed error upon review. CR 51(f); *Stuart v. Consolidated Foods Corp.,* 6 Wn. App. 841, 496 P.2d 527 (1972).

■ The replacement costs of improvements may be introduced into evidence whether or not there is market data

upon which to base an opinion as to the value of the property. In *State v. Wilson,* 6 Wn. App. 443, 450, 493 P.2d 1252 (1972), the court said concerning proof of replacement costs:

> We adopt the majority rule that evidence of cost of reproduction of structures less depreciation may be introduced whenever the structures are well adapted to the land upon which they stand. The proper measure of just compensation is the value of the land with the buildings upon it, and the owner therefore receives nothing for the buildings unless they increase the market value of the land. The reproduction cost of the structure on another comparable parcel of realty is not the sole measure of compensation but it is a factor to be considered in determining fair market value of the property as a whole. When the cost of reproduction (or the original cost) is considered as an element in determining market value, a proper deduction must be made for depreciation. Depreciation is not limited to physical wear and tear but it includes economic and functional obsolescence. 4 J. Sackman, Nichols on Eminent Domain § 12.313 (rev. 3d ed. 1969); 5 J. Sackman, Nichols on Eminent Domain § 20.2 [1] (rev. 3d ed. 1969); 2 L. Orgel, Valuation Under Eminent Domain § 190 (1953), *see State v. Red Wing Laundry & Dry Cleaning Co., supra* [253 Minn. 570, 93 N.W.2d 206 (1968)].

*See also Pierce County v. King,* 48 Wn.2d 43, 290 P.2d 462 (1955); *Sedro-Woolley v. Willard,* 71 Wash. 646, 129 P. 372 (1913). The evidence of replacement costs was properly admitted. Further, the instruction proposed by the condemnor concerning replacement costs, while a proper statement of the law, was unnecessary since the instructions given did limit the consideration of this evidence to its effect upon the award to be made as the fair market value of the real property and fixtures attached.

■ The appraiser of the property owner may testify upon direct examination concerning a comparable sale although the sale was not considered by him in his evaluation. The condemnor objects to this appraiser testifying concerning an alleged comparable sale which took place June 15, 1971. An expert witness may testify as to supposed compa-

rable sales in order to show why he rejects a particular sale as being unhelpful in establishing the value of the subject land and a sale which could be discarded insofar as establishing value. He may do this in contradiction of the expert appraisers of the opposing condemnor in order that the jury may decide whether there is a sound basis for the opinions given by either appraiser. The admission of such testimony is within the discretion of the trial judge. As stated in *State v. Wineberg*, 74 Wn.2d 372, 383, 444 P.2d 787 (1968):

> These two decisions taken together provide the following rules: (1) an expert witness will not be allowed to testify to a valuation opinion which is not the product of his independent judgment, but is merely another person's hearsay opinion which the witness has accepted as his own; but (2) an expert witness may, in the trial court's discretion, be allowed to testify to a valuation opinion even though some of the factors considered by the expert in reaching his opinion would be hearsay and inadmissible as independent evidence. We now hold that, when an expert is allowed to testify to a valuation opinion which is in part based on facts which would normally be hearsay and inadmissible as independent evidence, the trial court may in its discretion allow the expert to state such facts for the purpose of showing the basis of the opinion. The exclusion of such evidence, however, must be based on a sound exercise of discretion and not on an erroneous application of the hearsay and best evidence rules. See, *United States v. 5139.5 Acres of Land, supra* [200 F.2d 659, 661 (4th Cir. 1952)]; *United States v. Katz*, 213 F.2d 799 (1st Cir. 1954).

The testimony was properly admitted.

■ The court instructed the jury as follows:

If you find from the evidence that there is a present temporary decline in property values, you may consider what effect it would have on the well informed seller who desires to sell but not under any compulsion to sell immediately in fixing the price he would accept as of now.

It is contended that the instruction was erroneous in that it allowed the jury to deviate from the rule that *current*

fair market value is the measure for valuation of property to be taken, allowed the jury to establish value as of some date other than the date of trial and failed to delineate standards for determining whether a temporary decline in property values existed. *Alishausky v. McDonald,* 117 Conn. 138, 167 A. 96 (1933) and *Forest Preserve Dist. v. Eckhoff,* 372 Ill. 391, 24 N.E.2d 52 (1939), are cited as contrary to the instruction. In those cases, however, the court correctly refused to direct the jury to value the property as of a date other than the date of the taking. The instruction quoted above clearly directs valuation as of the date of trial.

■ The city contends that instruction No. 6 which read:

Contention is made that market value is lessened by concern of prospective purchasers as to difficulty in obtaining permits from the state or U.S. Government for placing improvements on waterfront property. You should consider this only if you find from the evidence that such concern exists and affects the market value. Such a finding, as on all your findings, must not be based on speculation alone.

should not have been given since it should have included a discussion of the rule that ownership of lands beneath navigable waters does not give the owner the right to use such navigable waters. The condemnor did state specifically that no objection was made to the principle enunciated in the instruction, however. Exceptions to an instruction cannot be raised for the first time on appeal. *O'Brien v. Artz,* 74 Wn.2d 558, 445 P.2d 632 (1968).

The condemnor urges that instruction No. 6 did not cover properly the law concerning shorelines and property under navigable waters as it affects fair market value. The instruction given by the court is in line with the Laws of 1971, 1st Ex. Sess., ch. 286, p. 1496, RCW 90.58, known as the Shoreline Management Act of 1971. Under that act, a system requiring local government guidelines and programming for improvement of shorelines within their boundaries was contemplated. The private use of shorelands by

their owners is subject to the policies of the act and the master programs, guidelines and regulations promulgated thereunder. The effective provisions of the act require a landowner to secure a permit from the local governmental authority before developing a shoreline in the state.

The condemnor did propose an instruction concerning the use of land beneath navigable waters citing *Wilbour v. Gallagher*, 77 Wn.2d 306, 462 P.2d 232, 40 A.L.R.3d 760 (1969). The instruction generally would have informed the jury that the ownership of land beneath navigable waters is a limited ownership subject to the public right to navigate upon those waters, which navigation rights can only be curtailed by use permits from a governmental authority to the landowner. *See Harris v. Hylebos Indus., Inc.*, 81 Wn.2d 770, 505 P.2d 457 (1973). The instruction given succinctly set forth the impact of the act and the *Wilbour* decision upon the fair market value of shoreline real property. It allowed the city to argue its theory that a permit could be required to develop the shoreland and its theory that a permit could be required before the owner could impede navigation, both situations having a possible effect on fair market value and within the scope of the instruction on the subject.

The objection made to instruction No. 6 as given by the court was to the last sentence thereof. That sentence is misleading in that by forbidding speculation "alone" it implies that speculation to some extent may be permissible in determining the fair market value of property. Such is not the law; however, the objection to the instruction did not specifically point out this flaw and was insufficient to bring it to the attention of the trial court. *State v. McDonald*, 74 Wn.2d 141, 443 P.2d 651 (1968).

In the same area, the court's failure to give the condemnor's proposed instruction No. 11 (WPI 150.11) is challenged. The instructions given by the court sufficiently informed the jury of their duty to reach a result based upon evidence rather than conjecture. The instruction proposed is a correct statement of the law and would have

emphasized to the jury what should be considered in fixing the amount of compensation. However, the jury was not misled by the instructions when they are read as a whole, and they were guided correctly as to the elements that could be weighed in assessing compensation. *Seattle & M. R.R. v. Roeder,* 30 Wash. 244, 255, 70 P. 498, 94 Am. St. R. 864 (1902), said:

> Appellant requested the court to give the following instruction:
>
> "In assessing the damages to the market value of the property not taken, you should not take into consideration anything as an element of damages which is remote, or imaginary, or uncertain, or speculative, even though mentioned or testified about by witnesses; but the only elements which you should take into consideration as tending to reduce the market value are those which are appreciable and substantial, and which will actually lessen the market value of the property taken."
>
> The first part of this instruction down to the word "witnesses" was given by the court in substantially the language requested, but instead of the remaining portion the court said:
>
> "In estimating the damages to the remainder of the property, or that portion of the property described in the petition that is not taken, you should consider the effect, if any, upon the property by the construction of the road, and should award to the respondents such a sum as the evidence in this case convinces you, together with your view of the premises, the market value has depreciated by reason of the construction of the road in the manner as proposed."
>
> And then the court proceeded to correctly state what elements of damage the jury may consider. The latter part of the instruction requested necessarily followed as a conclusion from what was said in the former part; and, where the court subsequently correctly told the jury what elements of damage they might consider in determining the damages to the property not taken, there was a sufficient compliance with the request. For that reason it was not error to refuse the requested instruction.

Pursuant to RCW 8.25.070, attorneys' fees of $75,000 were awarded to respondents by the trial court. It is contended

that the court was limited to awarding attorneys' fees as provided for in the amendment to RCW 8.25.070, which provided for attorneys' fees based solely on minimum bar fee schedules for trial and hourly rates. Senate Bill No. 363, Laws of 1971, 1st Ex. Sess., ch. 39, p. 410.

The following chronology is helpful in considering this issue:

1. August 3, 1971. Respondents qualified for an award of attorneys' fees when the jury returned a verdict which exceeded by 10 percent the appellant's written offer given 30 days prior to commencement of the trial. RCW 8.25.070(2). We note in passing that this offer was withdrawn prior to trial so that the landowner was entitled to attorneys' fees on two bases under the statute.

2. August 6, 1971. Respondents filed a motion for an award of attorneys' fees.

3. August 7, 1971. Senate Bill No. 363, the limiting proviso to RCW 8.25.070 became law.

4. August 17, 1971. The hearing on attorneys' fees was held.

█ █ `The amendment to the statute was not in effect when the action was initiated during the trial, nor when respondents' counsel became entitled to an award of attorneys' fees. The date the fee was earned, to wit, the date the jury returned its verdict, rather than the date upon which the hearing upon fees was held, is determinative. The amendment to RCW 8.25.070 contained in Senate Bill No. 363 (Laws of 1971, 1st Ex. Sess., ch. 39) was a substantive change in the law and should not be given retroactive effect. *In re Seattle*, 79 Wn.2d 490, 494, 487 P.2d 777 (1971).

█ The condemning authority also objected to the award of expert witness fees as permitted under RCW 8.25.070(3). The venerable trial judge expressed his dismay at the size of present-day expert witness fees requested. Nonetheless, it was within his discretion to award the fees that he did, and we find no abuse in his decision.

The final challenge of the condemning authority is to the

direction to the payment of interest on judgment sums as follows:

(a) Interest on the jury verdict, from the date of the verdict to the date of the judgment on the verdict at the rate of six percent (6%) per annum.

(b) Interest on the judgment on the verdict and on the expert witness fees from the date of entry of the judgment on the verdict at the rate of eight percent (8%) per annum, and on the attorney's fee at the rate of eight percent (8%) per annum from the date of entry of the Order and Judgment fixing that fee.

RCW 8.28.040 enacted in 1943 reads:

Whenever in any eminent domain proceeding, heretofore or hereafter instituted for the taking or damaging of private property, a verdict shall have been returned by the jury, or by the court if the case be tried without a jury, fixing the amount to be paid as compensation for the property so to be taken or damaged, such verdict shall bear interest at the rate of six percent per annum from the date of its entry to the date of payment thereof: *Provided,* That the running of such interest shall be suspended, and such interest shall not accrue, for any period of time during which the entry of final judgment in such proceeding shall have been delayed solely by the pendency of an appeal taken in such proceeding.

In 1969, RCW 4.56.110(2), a general statute on judgments, was enacted which reads:

(2) Except as provided under subsection (1) of this section, judgments shall bear interest at the rate of eight percent per annum from the date of entry thereof: *Provided,* That in any case where a court is directed on review to enter judgment on a verdict or in any case where a judgment entered on a verdict is wholly or partly affirmed on review, interest on the judgment or on that portion of the judgment affirmed shall date back to and shall accrue from the date the verdict was rendered: *Provided, however,* That in any case where notice of appeal or petition for writ of review is filed prior to June 12, 1969, interest shall accrue from the date of entry of judgment and shall not date back to the date the verdict was rendered.

The trial court concluded that the general statute was

controlling and held that respondents were entitled to 8 percent interest on the judgment. We disagree.

A state or its subdivisions are not liable for interest except where it has expressly, or by a reasonable construction of a contract or statute, placed itself in a position of liability. *Bond v. State,* 70 Wn.2d 746, 425 P.2d 10 (1967); *Pape v. Armstrong,* 47 Wn.2d 480, 287 P.2d 1018 (1955). *See also* Annot., 24 A.L.R.2d 928 (1952).

The statute which expressly and specifically subjects a governmental authority with the power of eminent domain to liability for interest is RCW 8.28.040. Nothing in RCW 4.56.110 would indicate the state is subject to its provisions.

It is contended that the enactment of RCW 4.56.110 repealed the earlier provisions of RCW 8.28.040. Repeals by implication are not favored. *State ex rel. Wenatchee Heights Reclamation Dist. v. Banker,* 179 Wash. 343, 37 P.2d 1115 (1934); *State ex rel. Johnson v. Clausen,* 51 Wash. 548, 99 P. 743 (1909). This is especially true where the issue concerns the alleged repeal of a special or specific provision by the enactment of a more general provision. Unless the two acts are so clearly inconsistent they cannot both be given effect, or there is a clear legislative intent that the later general provision shall have universal application a general statute will not be held to have repealed a specific statute by implication. *Herrett Trucking Co. v. Washington Pub. Serv. Comm'n,* 58 Wn.2d 542, 364 P.2d 505 (1961); *Abel v. Diking & Drainage Improvement Dist. 4,* 19 Wn.2d 356, 142 P.2d 1017 (1943); 1A J. Sutherland, *Statutory Construction* § 23.15 (4th ed. C. Sands 1972). Special acts are not presumed to be repealed by general acts. *State ex rel. Wenatchee Heights Reclamation Dist. v. Banker, supra.*

The judgment of the trial court is affirmed in all aspects save that portion which directed that interest other than 6 percent be paid by the City of Renton.

The condemnee has filed a motion and brief requesting the award of reasonable attorneys' fees for this

appeal. RCW 8.25.070 authorizes the awarding of such fees to the condemnee in these circumstances. *State v. Kodama,* 4 Wn. App. 676, 483 P.2d 857 (1971). The motion is granted and the cause remanded to the trial court for the fixing of reasonable attorneys' fees on appeal.

HOROWITZ and WILLIAMS, JJ., concur.