[No. 21548-2-III.  Division Three.  September 23, 2003.]

THOMAS SHOWALTER, ET AL., *Respondents*, v. THE CITY OF CHENEY, ET AL., *Appellants*.

---

[17] Clerk's Papers at 190; *see* RCW 4.84.330.

*Frank Conklin*, for appellants.
*Brad E. Smith*, for respondents.

SCHULTHEIS, J. — During a downtown revitalization project, the city of Cheney (City) ordered Thomas and Robin Showalter to remove a canopy attached to the front of their downtown tavern and resting on the sidewalk. The Showalters sued to enjoin the removal of the canopy. Although the trial court granted a partial summary judgment dismissing the Showalters' complaint, it held that removal of the canopy was a taking of private property for public use, subject to compensation. A jury later awarded the Showalters $20,000 for the cost to replace the canopy, minus depreciation and other benefits.

On appeal, City contends the trial court erred in holding that the revocation of a license to use the sidewalk constituted a taking of property. It also assigns error to the trial court's (1) refusal to rule that the Showalters' canopy was a public nuisance, (2) admission of the Showalters' witness to testify about the cost of an expensive replacement canopy, (3) ruling that the taking was temporary rather than permanent, and (4) failure to dismiss when the Showalters did not introduce testimony about the old canopy's deterioration. Because we find that City did not invade a property

right of the Showalters when it ordered removal of the canopy, we reverse and dismiss.

FACTS

In 1972, the Showalters purchased a tavern business in downtown Cheney. They purchased the tavern building in 1976 and the attached buildings in the 1990s. A large metal awning or canopy fronted these buildings when they were purchased. The canopy, built in 1961, was fastened to the buildings and rested on metal support posts that were set on the sidewalk. It is undisputed that the canopy was constructed pursuant to a valid building permit.

City commenced a project in 2001 to beautify and revitalize the downtown area. During construction, the city manager approached Mr. Showalter and asked him to sign a release for removal of the canopy. Mr. Showalter refused to sign and asked the city council for permission to retain his canopy.

In a city council meeting held June 12, 2001, the city manager noted that the canopy would interfere with the design of the enhancement project. For instance, the canopy hung over wells in the new sidewalk that would be planted with trees. Mr. Showalter offered to cut holes in the canopy for the trees. He also promised to refurbish the admittedly unsightly canopy within a few years, when he could afford it. After a debate of various alternatives, the council voted to authorize the mayor to pursue removal of the canopy. A few days later, Mr. Showalter received a letter from the mayor demanding removal of his property from the City sidewalk:

> You now have until 5:00 P.M. June 29, 2001 to remove your property from the City right-of-way or to present an acceptable written plan of removal to the City Administrator. If you have not removed the post and canopy or have [not] submitted an acceptable plan of removal by the date above, the City Attorneys have been instructed to take all necessary action to clear the right-of-way.

Clerk's Papers at 24.

The Showalters filed a complaint for injunction and declaratory relief in July 2001. In August, City moved for summary judgment dismissal of the action and for an injunction ordering the removal of the Showalters' steel supports from the sidewalk and buildings. The trial court granted partial summary judgment for City in October, ordering the Showalters to remove the support posts and dismissing their causes of action with the exception of the issue of compensation. The canopy was removed by the Showalters later that month.

Trial was held in September 2002 on the issue of compensation. Arguing in a motion in limine that City's action involved a permanent taking, City proposed instructing the jury that the measure of damages was the fair market value before and after the taking. The Showalters argued that the taking was only temporary. Consequently, they urged the court to adopt the cost of repair as the measure of damages. The trial court adopted the Showalters' proposal, with an offset for any benefit to the Showalters and for depreciation. The jury awarded the Showalters $20,000 for the cost to replace the canopy, minus $4,400 for depreciation and $1,000 for the benefit the Showalters gained from the revitalization project. City was ordered to pay the Showalters' attorney fees of $12,000. After filing a timely notice of appeal, City filed a motion on the merits to reverse in April 2003. This motion has been referred to us for disposition.

### REVOCATION OF LICENSE

The bedrock question before this court is whether, by ordering removal of the canopy from the sidewalk, City invaded a property interest of the Showalters that requires compensation. The trial court found that City took the Showalters' private property for public use. City argues that it did nothing more than revoke a license to use the public sidewalk for support of the canopy.

██ The Washington Constitution prohibits taking or damaging private property for public use without just compensation to the owner. WASH. CONST. art. I, § 16; *Conger v. Pierce County*, 116 Wash. 27, 34, 198 P. 377 (1921). A governmental taking executed without the formal procedures of eminent domain is called an inverse condemnation. *See Phillips v. King County*, 136 Wn.2d 946, 957, 968 P.2d 871 (1998). To establish inverse condemnation, the property owner must prove "(1) a taking or damaging (2) of private property (3) for public use (4) without just compensation being paid (5) by a governmental entity that has not instituted formal proceedings." *Id.*

██ In this case, the trial court found that the Showalters had a revocable license to use the city sidewalk for the support of their canopy, and that they had no right to continue their encroachment on the right of way after that license was revoked by City. Neither party challenges this ruling, and it is supported by the record. "A license authorizes the doing of some act or series of acts on the land of another without passing an estate in the land and justifies the doing of an act or acts which would otherwise be a trespass." *Conaway v. Time Oil Co.*, 34 Wn.2d 884, 893, 210 P.2d 1012 (1949). Unlike an easement, a license is revocable and nonassignable and does not exclude possession by the owner of the servient estate. *Bakke v. Columbia Valley Lumber Co.*, 49 Wn.2d 165, 170, 298 P.2d 849 (1956). A license is created by the consent of the licensor, whether that consent is in writing, is by parol, or is implied by acquiescence. *Conaway*, 34 Wn.2d at 894. Although Cheney Municipal Code 12.36.010 provides that it is unlawful for any person to encumber a sidewalk by placing on it any structure, City acquiesced to the Showalters' use of the sidewalk for approximately 40 years. Consequently, the Showalters had a license by acquiescence until the time that City revoked the license.

The trial court further ruled, however, that the city council's decision authorizing City to order the Showalters to remove the canopy was a taking of private property for

public use. Due process, the court concluded, required City to pay compensation for this taking.

Any governmental activity that invades or interferes with the right to use and enjoy property is a taking. *Pruitt v. Douglas County*, 116 Wn. App. 547, 559, 66 P.3d 1111 (2003). The right to compensation is determined by asking whether the governmental action deprived the property owner of a valuable right. *Manufactured Hous. Cmtys. of Wash. v. State*, 142 Wn.2d 347, 367, 13 P.3d 183 (2000) (discussing police powers and eminent domain) (quoting *County of San Diego v. Miller*, 13 Cal. 3d 684, 691, 532 P.2d 139, 119 Cal. Rptr. 491 (1975)). Our question is whether the Showalters' canopy—situated as it was on a public right of way—constituted a valuable property right that was taken by governmental action.

"There can be no inverse condemnation if no property right exists." *Granite Beach Holdings, L.L.C. v. Dep't of Natural Res.*, 103 Wn. App. 186, 205, 11 P.3d 847 (2000). The Showalters had a license to maintain the supporting posts for their canopy on a public right of way. This license did not confer an interest in land, but a privilege to encumber public property. *See Bakke*, 49 Wn.2d at 170 (a license does not pass an estate in land). Implicit in the nature of a license is the licensee's presumed knowledge that permission may be withdrawn. Consequently, funds expended in reliance on a mere license do not create a valuable, compensable property right. *See Hathaway v. Yakima Water, Light & Power Co.*, 14 Wash. 469, 472-73, 44 P. 896 (1896); *State v. J.R. Leasing Co.*, 1 Wn. App. 944, 947, 466 P.2d 185 (1970).

Although no Washington case directly addresses this issue, a Division Three case, *Billington Builders Supply, Inc. v. City of Yakima*, 14 Wn. App. 674, 544 P.2d 138 (1975), provides an analogous situation. In *Billington*, Yakima purchased property from Billington for the purpose of widening the boulevard in front of Billington's business premises. During negotiations, Yakima assured Billington that the widening plans included on-street parking. Later,

Yakima enacted an ordinance eliminating on-street parking on the boulevard. Billington sued, seeking compensation under the theory of inverse condemnation for the taking of its alleged property right to the on-street parking. The trial court concluded that the loss of on-street parking was not a compensable item of damages. Noting that a property owner's benefit arising from the regulation of traffic is a privilege and not a right, the appellate court held that "the person who sells property to the municipality for parking does so with the presumed knowledge that the law allows the elimination of that parking without compensation to the seller." *Id.* at 677. Similarly, a person who builds a structure on property occupied by license does so with the presumed knowledge that the license may be revoked and the structure may have to be removed.

Two cases cited by the Showalters fail to support their argument for compensation. The first, *Southern California Fisherman's Ass'n v. United States*, 174 F.2d 739 (9th Cir. 1949), concerns improvements erected by Southern pursuant to revocable permits on land owned by the city of Los Angeles. Los Angeles terminated the permits and ordered removal of the improvements within 30 days. Before the 30-day period had elapsed, however, the United States government condemned the property and took possession of the improvements. The only issue in the case was the value of the improvements that had been taken by the government. Compensation was due solely because the United States government took possession of the improvements from Southern. *Id.* at 740.

The second case cited by the Showalters is *Mayor & City Council of Baltimore v. Brack*, 175 Md. 615, 3 A.2d 471 (1939). In *Brack*, the city of Baltimore had installed water, sewer, and drain pipes on private land subsequently bought by Mr. Brack. Baltimore had not negotiated an easement for these pipelines. Accordingly, the parties agreed that the city had merely a license to install and maintain the pipelines, a license that was revoked by Mr. Brack. The city sought compensation for the costs of the pipelines, which

were installed in reliance on the license. On appeal, the appellate court agreed with the trial court that Baltimore installed the pipelines at its own risk, with knowledge that the permission to place the pipelines on private land was revocable. *Id.* at 622. Consequently, Baltimore was not entitled to compensation for expenditures made on the faith of the license. *Id.* at 622-23.

■ The Showalters' predecessors in interest built a canopy supported by metal posts that rested on a public sidewalk. For 40 years, the canopy encumbered a public right-of-way at the sufferance of City. Throughout that time, the Showalters and their predecessors assumed the risk that City could revoke the license for use of the sidewalk. When City eventually did revoke the license, the Showalters were required to remove the support posts. Mr. Showalter claimed that the current canopy could not remain freestanding without extensive remodeling that he could not afford for another two years. Because revocation of the license was immediate, City was under no duty to allow the Showalters two years to comply. The pressing need to complete the downtown revitalization project made delay impractical and expensive.

Simply put, the Showalters had no property right to maintain the canopy on the sidewalk, and City did not invade or interfere with a property right when it ordered the Showalters to remove the canopy. Consequently, the trial court erred as a matter of law in entering a partial summary judgment order adjudging that City owed the Showalters compensation for taking private property for public use. *Phillips*, 136 Wn.2d at 956 (summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law). In light of this holding, we decline to address City's remaining assignments of error.

ATTORNEY FEES

■ The trial court awarded the Showalters fees and costs for prevailing in an inverse condemnation action and

they now request fees and costs on appeal. RCW 8.25.070; *City of Renton v. Scott Pac. Terminal, Inc.*, 9 Wn. App. 364, 377-78, 512 P.2d 1137 (1973) (attorney fees awardable under RCW 8.25.070 for the prevailing condemnee on appeal). Because the Showalters were not entitled to compensation for inverse condemnation, they were not entitled to attorney fees at trial, nor on appeal. RCW 8.25.070.

For the first time in its reply brief, City requests attorney fees pursuant to RAP 18.9, arguing that the Showalters do not have debatable issues. This is also the argument advanced in its motion on the merits, which is referred to us. The motion concludes with the following:

> WHEREFORE: The City of Cheney requests this Court to reverse the decision of the Superior Court and to award the City attorney fees pursuant to RAP 18.9 because the [Response] Brief filed by Mr. Showalter sought to raise frivolous issues and the cases cited did not support the argument. Analogous to the Court's authority under RCW 4.84.185, which authorizes sanctions for frivolous defenses, this Court should order Mr. Showalter to compensate the City of Cheney for the cost of preparing the Reply Brief in this cause.

Mot. on the Merits at 9. Apparently City seeks attorney fees for appealing against a frivolous response. Considering the fact that the Showalters were successful at the trial level on the very issues City appeals, we cannot say that the Showalters' response to City's appeal is frivolous. Consequently, City's request for attorney fees is denied.

Reversed and dismissed. The motion on the merits is denied.

SWEENEY and KURTZ, JJ., concur.